35 N.J. Super. 304 (1955)
114 A.2d 273
BASIL B. BRUNO, PLAINTIFF-APPELLANT,
v.
CITY OF LONG BRANCH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, NASH ALUMINUM WINDOW CORPORATION AND SEACOAST TERMINAL COMPANY, CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 25, 1955.
Decided May 5, 1955.
*307 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Sidney Alpern argued the cause for the appellant.
Mr. Edward Juska argued the cause for the respondent City of Long Branch.
Mr. James D. Carton, Jr., argued the cause for the respondents Nash Aluminum Window Corporation and Seacoast Terminal Company (Messrs. Durand, Ivins & Carton, attorneys).
The opinion of the court was delivered by FRANCIS, J.A.D.
In this proceeding in lieu of prerogative writ plaintiff attacked the validity of a resolution of the City of Long Branch providing for the exchange of certain pieces of realty between the city and the two corporate defendants. From a summary judgment for the defendants on the pleadings, plaintiff appeals.
During the pendency of the appeal Bruno died and an application was made at the oral argument to substitute his widow as party plaintiff. It was suggested that in the absence of a showing that the widow in some way has a personal standing or interest which would permit her to maintain the action, the appeal should be dismissed. R.R. 4:38-1. The problem was not briefed by the parties and we have concluded to pass it in order to decide the basic questions presented. In view of the conclusion reached, the issue of her standing from a factual as well as legal viewpoint can be the subject of action in the trial court.
*308 N.J.S.A. 40:60-51.1 permits a municipality to exchange lands owned by it for other lands under certain conditions. The Act provides:
"The governing body of any municipality may exchange any lands owned by or hereafter to be acquired by such municipality, or any right or interest therein, for other lands desired for public use, and may exact and receive a cash consideration in addition to such other lands desired for public use; provided, that such exchange shall have been or shall hereafter be authorized, by resolution of the governing body of such municipality, and such governing body has determined or hereafter shall determine that the lands to be conveyed to such municipality and the cash consideration, if any, to be paid to such municipality, are of greater value to the municipality for public use than the lands to be conveyed by the municipality, and that it is deemed in the public interest that such exchange of lands be consummated." L. 1942, c. 199. p. 570, as amended L. 1946, c. 157, p. 720. (Emphasis ours)
The parties are in agreement that on January 26, 1954 the city adopted the resolution which resulted in this action. It is attached to the complaint and incorporated therein by reference; the answer of the city admits its adoption.
From the recitals contained therein, it appears that the city owned certain adjoining properties. On one parcel a building is located which is said to require extensive and expensive repairs, the making of which is not justified for any contemplated use thereof. Nash Aluminum Company, or its affiliate Seacoast Terminal Company, owns premises with a building thereon on the same street which the governing body wishes to acquire for needed garage and storage space.
The governing body then authorizes the conveyance of the city's premises to Nash or Seacoast (as they wish the title to be taken) in exchange for the described premises of Nash or Seacoast and the payment by Nash of $20,000 in cash, plus the waiver of a sum due it from the municipality in the amount of $5,744. There are incidental stipulations also, largely dealing with an agreement by Nash to cause the construction of another substantial building on the land being acquired; these need not be considered.
It is recited and resolved among other things that the lands being acquired by the city "for the reason set forth above are *309 of greater value to the City of Long Branch for public use" than those being transferred and that "it is in the public interest that the exchange of lands be consummated."
Plaintiff's complaint consisting of four counts challenges the validity of the resolution. Answers were filed by the defendants to which certain motions were directed. Some time after they were disposed of adversely to the plaintiff the city moved formally "that the cause be advanced for hearing, trial and disposition" pursuant to R.R. 4:88-6 and "for summary judgment." On the argument thereof, no affidavits or other proof were submitted by either side.
It is difficult to determine whether this motion was intended to be one for summary judgment which may be made "with or without supporting affidavits" under R.R. 4:58-2 or one for judgment on the pleadings under R.R. 4:12-3. The latter motion may be made after the pleadings are closed and the rule provides that if on the argument thereof "matters outside the pleadings are presented to and not excluded by the court," it shall be treated as one for summary judgment. Here no such matters were presented.
In any event, the application for summary judgment was granted, the order reciting that "the pleadings filed herein show palpably that there is no genuine issue as to any material fact challenged, and that the defendant, City of Long Branch, has a right to such a judgment as a matter of law."
Basically then, the problem to be considered by us is whether the pleadings alone show issues of fact and present a cause of action which requires adjudication by the trial court.
As already indicated, the complaint comprises four counts. The first count charges that the resolution is not valid because it provides for an exchange of lands on which buildings are located whereas the statute speaks only of exchange of "lands."
The second count charges absence of any statutory authority generally to adopt the resolution.
The third count adds the charge that the consideration for the exchange is not a cash consideration as required by *310 the statute "in that said resolution provides for the waiver by the defendant, Nash Aluminum Window Corporation, of payment of the sum of $5,744 due it from the City, which payment plaintiff further alleges is not in fact so due."
The fourth count alleges that prior to the adoption of the present resolution the city proposed to enact another one which provided for payment of $10,000 to it by Nash and that plaintiff and other taxpayers objected because of inadequacy. As a result (it is claimed) Nash increased the amount to $20,000. It is then alleged that
"the value of the building to be conveyed by the City is substantially greater than the building to be conveyed to the municipality, together with the other considerations, since the building now owned by the City is a well built brick structure, and the building to be conveyed to the municipality is a dilapidated frame structure."
The answers of the defendants deny the basic factual assertions in each of the counts.
A motion for summary judgment where no affidavits or other extrinsic proof are presented to the court is very much akin to one for judgment on the pleadings. Cf. Schnitzer & Wildstein, N.J. Rules Serv., A IV-277, Annotation, R.R. 4:12-3, § 6. Moore says there is no functional difference between them. 6 Moore, Federal Practice (2d ed.), § 56.09. In the consideration of the matter, factual allegations of the complaint must be taken as true and denials of those allegations are looked at only to see if factual issues of legal consequence are involved. And summary judgment should be granted only where the factual issues resulting from the pleadings if proved at the trial will not establish a cause of action upon which relief can be granted or where accepting all of the allegations of the complaint as true a cause of action is not stated. Miller v. Atlantic Casualty Ins. Co., 16 N.J. Super. 531 (Law Div. 1951).
Examining the complaint in the light of these observations the first count involves purely a question of statutory construction. When the statute authorizes the exchange of "any lands" does it comprehend lands on which buildings have been constructed?
*311 This statute, like all expressions of a legislative intention to confer powers upon a municipality, is entitled to liberal construction. Marangi Bros., Inc., v. Board of Com'rs. of Village of Ridgewood, 33 N.J. Super. 294, 301 (App. Div. 1954).
In common understanding and ordinary use "land" or "lands" not only mean the soil but everything attached thereto as well, the trees, shrubs, buildings and fixtures. 42 Am. Jur., Property, § 14, p. 196; Bouvier, Law Dictionary 648 (Baldwin's Cent. Ed. 1948). We have no doubt that in the context "lands" was used in its broadest sense. Any hesitancy on the subject is dispelled by the appearance of the qualifying adjective "any" which connotes lands indiscriminately or indifferently.
This interpretation of the statute negatives the existence of the claim for relief in the first count.
The third and fourth counts create factual issues and may be considered together. In order for the resolution and the exchange itself to be within the legislative grant they must conform to its requirements. Among these are that the governing body has determined in good faith that the lands to be conveyed and the cash, if any, to be paid are of greater value to the municipality for public use than the lands to be conveyed by the municipality and that it is deemed in the public interest that the exchange of lands be consummated.
In making the determinations called for by the statute, the governing body is vested with a wide area of discretion. And its presumptively valid decision should not be interfered with by the courts in the absence of fraud, arbitrary action or palpable abuse of discretion. Fraser v. Township of Teaneck, 1 N.J. 503, 507 (1949); Murphy v. City of Bayonne, 130 N.J.L. 336 (Sup. Ct. 1943); Soper v. Conly, 108 N.J. Eq. 370 (Ch. 1929), affirmed 107 N.J. Eq. 537 (E. & A. 1931); Oakley v. City of Atlantic City, 63 N.J.L. 127 (Sup. Ct. 1899); 2 McQuillin, Municipal Corporations (3d ed. 1949) 656. Nor would the fact that a difference of opinion existed among qualified persons as to the value of the *312 properties involved mean that the resolution should be vacated so long as the values decided upon did not represent arbitrary action, fraud or palpable abuse of discretion. City of Newark v. New Jersey Turnpike Authority, 7 N.J. 377, 383 (1951). In this connection, of course, the decision must be made with the rule in mind that the city should receive fair value for what it conveys. Jamouneau v. Local Government Board, 6 N.J. 281, 293 (1951). And it may be noted that fair value under the statute here means that the lands and the cash consideration, if any, coming to the municipality "are of greater value" to it "for public use" than those being conveyed.
Plaintiff charges, and it is considered admitted for this action, that the $5,744 (which may be treated as part of the cash consideration) conceded by the city to be due to Nash, is not owing at all. Further, it is charged that the city's "building" is "substantially" greater in value than that being received. This, too, is taken as admitted for purposes of the motion. The failure to allege that the difference in value between the municipality's building on the one hand and the Nash building and the added considerations on the other, is not equalized or compensated for by an excess in value of the city's land over that of Nash, leaves the plaintiff with a very slender thread to support the complaint.
However, motions of this kind are granted with great caution and the allegations of the complaint are required to be construed most favorably to the plaintiff. Puccio v. Cuthbertson, 21 N.J. Super. 544 (App. Div. 1952). It is charged that the statute was violated, that the admission by the city that it owes $5,744 to Nash, which debt is being waived as part of the consideration, is untrue and in effect that fair value is not being received for its building. While this can scarcely be described as clear or comprehensive pleading, the facts asserted are admitted for present purposes. As a result an aura of doubt is thrown around the resolution from the standpoint of compliance with the statute. Perhaps if the city had seen fit to follow the more usual practice on applications for summary judgment and had submitted affidavits as *313 to the transaction, the doubt would have been dispelled and the absence of any genuine issue of material fact would have been demonstrated.
In the present posture of the case, we think that summary judgment should not have been granted. Accordingly it is reversed.