BASIL B. BRUNO, PLAINTIFF-APPELLANT, v. CITY OF LONG BRANCH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, NASH ALUMINUM WINDOW CORPORATION AND SEACOAST TERMINAL COMPANY, CORPORATIONS OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.

Argued February 6, 1956—Decided February 27, 1956.

Mr. *Sidney Alpern* argued the cause for appellant.

Mr. *James D. Carton, Jr.,* argued the cause for respondents (*Mr. Edward F. Juska,* attorney for respondent City of Long Branch; *Messrs. Durand, Ivins & Carton,* attorneys for respondents Nash Aluminum Window Corporation and Seacoast Terminal Company).

The opinion of the court was delivered by

WACHENFELD, J.   On January 26, 1954 the Board of Commissioners of the City of Long Branch adopted a resolution authorizing the proper city officials to convey "lands owned by the City * * * known as the 'Button Factory' and adjacent land" to the Nash Aluminum Window Corporation and its affiliate, Seacoast Terminal Company, in exchange for a tract of land then owned by Seacoast.   Both tracts of land involved in the exchange, that which the city was to convey and receive, were improved with buildings.

In addition to the land to be received by the city, the resolution recited Nash's agreement to pay a cash consideration in the sum of $20,000 and to forego a claim which it had against the city in the amount of $5,744 for repair work which Nash had done on behalf of the city.   The resolution further recited that the lands to be conveyed to the city were of greater value to the municipality for public use than the lands which it was conveying, and that the exchange of lands was "in the public interest."   The resolution also included many conditions to the contemplated exchange which are not here pertinent.

Less than 30 days following the adoption of the foregoing resolution the plaintiff, Basil Bruno, a resident and taxpayer of the City of Long Branch, commenced this action in lieu of prerogative writ endeavoring to have the resolution de-

clared void and to enjoin the exchange of properties contemplated therein. His complaint listed four counts, the first two of which, in substance, alleged the same cause of action, to wit, that the statute under which the city purportedly acted in adopting the resolution, *N. J. S. A.* 40:60–51.1, did not authorize the city to exchange lands and buildings but only vacant or unimproved lands. In the third and fourth counts the plaintiff alleged, in substance, that the city was getting the worst of the bargain and that the claim which Nash waived, which formed part of the consideration for the exchange, was not in fact a valid claim.

Summary judgment dismissing the complaint was granted on the motion of the defendants by the Superior Court, Law Division. Plaintiff filed a notice of appeal to the Appellate Division from the judgment, but prior to argument he died. On the oral argument of the appeal, application was made by plaintiff's counsel to substitute his widow as the party-plaintiff. The Appellate Division, while stating a question existed as to the widow's standing to maintain the action as a substituted party, nevertheless disposed of the appeal on its merits and reversed the action of the Law Division by reinstating the complaint as to its third and fourth counts and directed a trial thereon.

The widow, acting in the name of the deceased plaintiff, petitioned this court for certification to review that part of the judgment of the Appellate Division which affirmed the dismissal of the first and second counts of the complaint and certification was granted. 19 *N. J.* 331 (1955). No cross-petition for certification was filed by the defendants.

In view of the failure of the defendants to seek certification from the judgment of the Appellate Division, the question of the abatement of the action by virtue of the plaintiff's death is not properly before us, see *Liberty Title & Trust Co. v. Plews,* 6 *N. J.* 28 (1950), and we express no opinion as to the propriety of the continuation of the action in the name of the plaintiff by his widow-administratrix. That matter will be left, as directed by the Appellate Division, for the determination of the Law Division on remand.

The only question before us is whether *N. J. S. A.* 40:60–51.1 authorizes a municipality to enter into an exchange of lands on which buildings are located. The statute provides:

"The governing body of any municipality may exchange any lands owned by or hereafter to be acquired by such municipality, or any right or interest therein, for other lands desired for public use, and may exact and receive a cash consideration in addition to such other lands desired for public use; provided, that such exchange shall have been or shall hereafter be authorized, by resolution of the governing body of such municipality, and such governing body has determined or hereafter shall determine that the lands to be conveyed to such municipality and the cash consideration, if any, to be paid to such municipality, are of greater value to the municipality for public use than the lands to be conveyed by the municipality, and that it is deemed in the public interest that such exchange of lands be consummated."

The statute on its face not containing any express authorization for an exchange of lands *and* buildings, the plaintiff urges that the statute does not permit the exchange of property to be affected by the city's resolution.

We cannot agree. As we have so frequently noted since the adoption of the Constitution of 1947, we are enjoined by that document to construe liberally, in their favor, laws concerning municipal corporations, and the powers conferred upon them are not limited to those granted in express terms but include those of "necessary or fair implication, or incident to the powers expressly conferred, or essential thereto * * *." *Constitution of 1947, Art. IV, Sec. VII, par.* 11. See *Monmouth Lumber Co. v. Ocean Twp.,* 9 *N. J.* 64 (1952) ; *Scaturorchio v. Jersey City Incinerator Authority,* 14 *N. J.* 72 (1953) ; *Marangi Bros. v. Board of Comm.,* 33 *N. J. Super.* 294 (*App. Div.* 1954) ; *Jardine v. Borough of Rumson,* 30 *N. J. Super.* 509 (*App. Div.* 1954).

Even with no other guide to the legislative intent, we should hesitate to say that a municipality could not, under this statute, enter into an exchange of lands simply because the lands to be conveyed or received by it had buildings erected thereon. Such a limitation would be seemingly un-

reasonable in light of the manifest statutory purpose to authorize a local governing body to enter into exchanges of real property which are in the public interest. The essential consideration, under the statute, is whether the lands and other consideration to be received by the municipality "are of greater value * * * for public use" than the lands which are to be conveyed. The fact that the land to be conveyed by the municipality is improved by the presence of a building has no conclusive bearing upon the usefulness to the public of the land, nor does it materially relate to the question whether the municipality is receiving an adequate *quid pro quo* in exchange.

However, more than just a general canon of construction is involved here. For under *R. S.* 1:1–1 the Legislature has specifically provided:

"Technical words and phrases, and words and phrases having a special or accepted meaning in the law, shall be construed in accordance with such technical or special and accepted meaning."

It is indisputable that the term "lands" is, in the law, a word of art. It has a well defined technical meaning:

"It is a *nomen generalissimum* and includes not only the soil, but everything attached to it, whether attached by the course of nature, as trees, herbage, and water, or by the hand of man, as buildings, fixtures and fences." 42 *Am. Jur.* 196.

The reported decisions holding that the term "lands," whether used in a public statute or private contract, includes buildings and other improvements thereon are legion and are collected in 24 *Words and Phrases, Land, pp.* 138 *et seq.*

In the absence of any contrary inference, we can only assume the Legislature employed the term "lands" in the present context in its full technical, legal signification, which, as noted above, includes buildings or any other improvements which may exist thereon. We determine, therefore, that the exchange of lands contemplated by the questioned resolution of the board of commissioners was authorized by *N. J. S. A.* 40:60–51.1.

The remaining contentions advanced by the plaintiff are so wholly devoid of merit as to make discussion thereof unnecessary.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.