**In re GODROY WHOLESALE CO., INC., Alleged Debtor.**

**Bankruptcy No. 4–81–00756–G.**

United States Bankruptcy Court, D. Massachusetts.

Feb. 24, 1984.

---

James F. Queenan, Jr., Bowditch & Dewey, Worcester, Mass., for Godroy Wholesale Co., Inc.

Leonard Krulewich, Karger, Krulewich & Arnowitz, Boston, Mass., for Crosley Bldg. Corp. of Maine.

## MEMORANDUM AND ORDER

PAUL W. GLENNON, Bankruptcy Judge.

This involuntary Chapter 11 case was commenced by Crosley Building Corporation of Maine ("Crosley") by the filing of a petition under 11 U.S.C. § 303. Godroy Wholesale Company, Inc. ("Godroy") was, at that time, a manufacturer and distributor of general merchandise, operating sixteen variety stores in Massachusetts and New Hampshire under the trade name Godin Stores, Inc.[1]. Crosley leased Godroy space for a store in Allenstown, New Hampshire for a ten-year term commencing October 1, 1966. Godroy had two five-year options, the first commencing October 1, 1976. Godroy apparently exercised that option. On July 1, 1978, the Allenstown store was closed and the premises vacated by Godroy. Godroy continued to make monthly rental payments through January 1980.[2] Whether additional payments were due was disputed. Crosley filed a proof of claim in the amount of $20,682.77 which included

---

1. Godin Stores, Inc. was legally merged into Godroy Wholesale Company, Inc. in 1980.

2. A single payment was also made in August 1980. Edgar J. Roy ("Roy"), President of Godroy, testified this last payment was made in error.

unpaid rent, and compensation for water damage to the premises which occurred after the premises were vacated. Godroy's defense to the claim of Crosley was that Crosley unreasonably withheld consent to a proposed assignment of the lease by Godroy and, therefore, Crosley was not entitled to rent for the balance of the lease term.

Crosley's petition was filed pursuant to subsection 303(b)(1) and (2) which reads as follows:

> (b) An involuntary case is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;
>
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims; . . .

The involuntary petition was contested by Godroy by the filing of an answer and counterclaim. In its answer, Godroy denied that Crosley had a provable claim against it, not contingent as to liability, amounting in the aggregate, in excess of the value of securities, to $5,000 or more; denied that it was unable to pay its debts as they matured; and denied that the number of unsecured claims against it, not contingent as to liability, were fewer than twelve. In its counterclaim, Godroy asserted that Crosley filed the petition in bad faith and sought judgment against Crosley for costs, reasonable attorney's fee, damages proximately

caused by the petition filing, and punitive damages, all under § 303(i).

The petition was timely controverted and a trial held. In sum, the Court held that the petitioning creditor failed to show that Godroy was generally not paying its debts as they matured or that Godroy lacked the ability to pay its debts as they matured. See § 303(h). Therefore, the Court found that an order for relief against the debtor should not enter, and dismissed the involuntary petition. The Court also noted that because Godroy had well in excess of twelve creditors on the date of filing, whose claims were not contingent as to liability, none of which joined Crosley's petition, a necessary jurisdictional requirement was not satisfied.[3]

Because of the potential harm to Godroy of the pendency of the involuntary Chapter 11 proceeding, the Court promptly entered a memorandum and order dismissing the case, but postponed its findings as to damages until such time as the briefs of the parties were received and reviewed. It is the issue of damages which is addressed below.

## DISCUSSION

 Initially, although not raised by either party, the Court wishes to make clear that even though it has dismissed the above-captioned proceeding, it has not lost jurisdiction to award costs, attorney's fees and other damages sustained by Godroy. 11 U.S.C. § 303(i) specifically provides that the Court may grant such judgment to a debtor (absent a waiver by the debtor) if the petition is dismissed under § 303. See also In re Cooper School of Art, Inc., 709 F.2d 1104, 10 B.C.D. 971 (6th Cir.1983); H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977); and S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978), U.S.Code Cong. & Admin. News 1978, p. 5787.

Specifically, 11 U.S.C. § 303(i) provides:

---

**3.** Since the Court found that there were in excess of twelve holders of claims, there was no need to discuss the circumstances under which a single creditor may establish a case for involuntary bankruptcy with only proof of default in payment. But on this point, the Court instructed the parties to see In re 7H Land & Cattle Co., 6 B.R. 29, 6 B.C.D. 572 (Bkrtcy.D. Nev.1980) and In re Arker, 6 B.R. 632, 6 B.C.D. 1281 (Bkrtcy.E.D.N.Y.1980).

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

The " '[o]r' in § 303(i) is not exclusive.... The court may grant any or all of the damages provided for" by this section. H.R.Rep. No. 595, 95th Cong., 1st Sess. 324 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 34 (1978). *See also In re Camelot, Inc.,* 25 B.R. 861 (Bkrtcy.E.D.Tenn.1982), *aff'd,* 30 B.R. 409 (Bkrtcy.E.D.Tenn.1983); *In re Ramsden,* 17 B.R. 59, 8 B.C.D. 868 (Bkrtcy.N.D.Ga.1981); and 11 U.S.C. § 102(5). The awarding of damages is permissive and properly within the discretion of the Court. *See In re Camelot, Inc., supra* and *In re R.V. Seating, Inc.,* 8 B.R. 663 (Bkrtcy.S.D.Fla.1981). It is easy to understand why the Bankruptcy Code expanded the provisions for awarding damages as protection for an alleged debtor when one considers the increased ease with which an involuntary petition may now be filed.[4] "An allegation of bankruptcy is a charge that ought not be made lightly. It usually chills the alleged debtor's credit and his source of supply. It can scare away customers. It leaves a permanent scar even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a routine collection device would quickly paralyze this court." *In re SBA Factors of Miami,* 13 B.R. 99, 101, 8 B.C.D. 281, 282 (Bkrtcy.S.D.Fla.1981). *Cf. In re Mahon,* No. 80–02321(2), slip op. (Bkrtcy.E.D.Mo. May 8, 1981).

I find that Crosley should be made to bear the burden of its haphazard actions and am therefore awarding costs and reasonable attorney's fees to Godroy pursuant to § 303(i)(1)(A) and (B). However, at the time of trial, Godroy had not received a bill for legal services and was therefore unable to show its actual out of pocket expenses (It estimated same to be $6,000). Accordingly, Godroy shall have twenty days to file proof of same by way of affidavit.

Since Godroy has not requested judgment under § 303(i)(1)(C), and, moreover, since it appears that this subsection does not apply, no award will be made pursuant to § 303(i)(1)(C).

■ The Court finds that the petition was filed in bad faith. Crosley's only attempt to discover if Godroy was "generally not paying [its] debts as such debts became due" was made by its president, McDonald. McDonald asked a long-standing employee of a large chain of hardware stores, located throughout New England, about Godroy's

---

4. Under the Bankruptcy Act, the relevant provision, 11 U.S.C. § 11(a)(18), read:

The courts of the United States hereinbefore defined as courts of bankruptcy are hereby created courts of bankruptcy and are hereby invested, within their respective territorial limits as now established or as they may be hereafter changed, with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this Act, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held, to—

(18) Tax costs and render judgment therefor against the unsuccessful party, against the successful party for cause, in part against each of the parties, and against estates, in proceedings under this Act....

Bankruptcy Rule 115(e) provided:

When a case commenced by the filing of a petition against any person pursuant to Rule 104(a) or Rule 105(b) or (c) is dismissed or withdrawn, the court on reasonable notice to the petitioner or petitioners may award to the prevailing party the same costs that are allowed to a prevailing party in a civil action and reasonable counsel fees, and shall award any other sums required by the Act.

credit reputation and history of bill paying. The employee noted that to the best of his knowledge, Godroy was paying its suppliers. Notwithstanding this information, McDonald decided that Godroy was "generally not paying [its] debts as such debts became due" based on the fact that he personally failed to receive rental payments due, even though he knew that Godroy disputed that rent was due and owing. McDonald explained his decision to file the involuntary petition by stating that since all other suppliers were paid in a timely fashion, Crosley was Godroy's only "creditor".[5] Furthermore, McDonald then stated that because all other suppliers were paid in a timely fashion, and Crosely was Godroy's only creditor ("as defined by the Bankruptcy Act"), only one creditor was needed to commence the involuntary proceeding.

 Crosley took no affirmative steps to insure that his suspicions were true. Although Bankruptcy Rule 104(e) (now Rule 1003(d)) specifically recognizes that a single petitioning creditor may be mistaken as to the total number of creditors and therefore permits additional creditors to join an involuntary petition following an answer alleging greater than twelve creditors, this does not imply that a single creditor may commence an involuntary proceeding, without due investigation and escape a "bad faith" finding. *See In re Rite-Cap, Inc.,* 1 B.R. 740, 5 B.C.D. 1209 (Bkrtcy.D.R.I.1979). On the other hand, simply because a single petitioning creditor conducts a cursory investigation does not, as a matter of law, indicate bad faith. *In re Crown Sportswear, Inc.,* 575 F.2d 991 (1st Cir.1978). The Court must investigate the facts before it. From the facts before me I find that Crosley should have made some additional inquiries, to determine the total number of

claim holders and the amount of their claims, following the scant evidence it uncovered from its preliminary questioning. *See Myron M. Navison Shoe Co. v. Lane Shoe Co.,* 36 F.2d 454 (1st Cir.1929) and *In re Richard L. Herriott,* 1 B.C.D. 793 (Bkrtcy.D.Mass.1975).[6]

While "bad faith" is not defined in the Bankruptcy Code and case law is scant, this Court believes that where Crosley failed to make the additional inquiries, which would not have been time-consuming nor disproportionate to the relief sought, and which if made, would have saved Godroy the stigma of bankruptcy, Crosley has acted in bad faith. *See In re SBA Factors of Miami, supra. Cf. In re Allen Rogers & Co.,* 34 B.R. 631 (Bkrtcy.S.D.N.Y.1983). It may be that Crosley acted on poor legal advice—it has been held that failure to pay a truly disputed debt should not be grounds to sustain an involuntary petition (*see In re All Media Properties, Inc.,* 5 B.R. 126, 6 B.C.D. 586 (Bkrtcy.S.D.Tex.1980), *aff'd mem.,* 646 F.2d 193 (5th Cir.1981))—however, this does not negate bad faith and excuse Crosley's indifferent behavior. *See In re Ramsden, supra.*

Godroy, however, failed to prove any proximate damages flowing from the filing of the involuntary petition. Norman St. Denis ("St. Denis"), Godroy's controller, testified that the alleged debtor had received phone calls from six creditors requesting payment in advance of the regular payment terms. Because of the need to make accelerated payments, the alleged debtor claimed it would be required to borrow money to purchase inventory. St. Denis estimated that at a minimum, $100,000 at two percent over prime (16%) would be required. However, there was no evidence that the debtor was planning to or had

---

5. He stated, "my understanding of a creditor is someone who has not been paid their bill ... on time and that when the amount due becomes delinquent, at that moment the person becomes a creditor." McDonald then defined a debt as "an obligation to pay something at some point in time that is agreed upon by the parties".

6. While there was no provision under the Bankruptcy Act for awarding punitive damages for involuntary cases filed in bad faith, under principles of equity, the faith of the petitioning creditor(s) was nonetheless taken into account in determining the propriety of the filing. In this respect, cases decided under the Bankruptcy Act are instructive. *Cf. In re Howard, Neilsen & Rush, Inc.,* 2 B.R. 451, 5 B.C.D. 1320 (Bkrtcy.M.D.Tenn.1979).

actually paid these creditors sooner than usual nor evidence that the loan would in fact be necessary.[7] It was also stated that an unflattering report from Dun & Bradstreet was published and available to subscribers. However, there was no evidence that suppliers or creditors used this information in their dealings with Godroy. St. Denis also stated that four days of his time was spent on matters raised by the involuntary petition, while Roy spent one to two days on same. Unfortunately for Godroy, there is no evidence as to the value of either of these individuals services. Therefore, even though I believe the petition was filed in bad faith, I am unable to award proximate damages under § 303(i)(2)(A). *See In re Grecian Heights Owners' Association*, 27 B.R. 172 (Bkrtcy.D.Ariz.1982) and *In re Ramsden, supra.*

Punitive damages are generally recognized as appropriate to deter repeated conduct by the party before the Court and by others, and to punish the wrongdoer; not to compensate the injured party. *See In re SBA Factors of Miami, Inc., supra; In Re Grecian Heights Owners Association, supra,* and *In re Camelot, Inc., supra.* Since I am awarding attorney's fees in the approximate amount of $6,000, I find punitive damages in the amount of $250 to be sufficient. *See In re Grecian Heights Owners Association, supra.*

### ORDER

In accordance with the foregoing:

1. Godroy's counterclaim for costs and attorney fees under 11 U.S.C. § 303(i)(1)(A) and (B) is ALLOWED. Godroy shall have twenty days from the date of this order to supply the Court and Crosley with an affidavit setting forth same.

2. Godroy's request for judgment under 11 U.S.C. § 303(i)(2)(A) is DENIED.

3. Godroy's request for punitive damages under 11 U.S.C. § 303(i)(2)(A) is ALLOWED in the amount of $250.00.

SO ORDERED.

7. Although it may be argued that such evidence was not available at the time of the trial, the alleged debtor did not request additional time to file proof of same nor an additional hearing.