## In the Matter of ELSUB CORPORATION, a New Jersey Corporation, Alleged Debtor.

Bankruptcy No. 85–05972.

United States Bankruptcy Court,
D. New Jersey.

April 25, 1986.

Crummy, Del Deo, Dolan, Griffinger & Vecchione by Michael R. Griffinger, Karen A. Giannelli, Newark, N.J., for Elsub Corporation.

McCarter & English by Joseph E. Irenas, Newark, N.J., for Playboy Enterprises, Inc.

Kirkland & Ellis by Richard F. Levy, Chicago, Ill., for Playboy Enterprises, Inc.

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

This matter is before the court on a motion filed by Playboy Enterprises, Inc. (PEI), seeking an Order establishing that "as a matter of law," PEI did not act in bad faith by filing an involuntary petition

in bankruptcy against Elsub Corporation (Elsub) under 11 U.S.C. § 303(b)(2) with fewer than three supporting creditors. Additionally, PEI is seeking a protective order barring all discovery on that issue, pursuant to Fed.R.Civ.P. 26(c). The discovery portion of the instant motion is the subject of a subsequent motion filed by PEI, and will not be disposed of herein. Elsub filed a brief in opposition to the instant motion, and oral argument on the motion was heard by this court on February 10, 1986.

The background of this case was set out at length in this court's decision rendered on the record on January 3, 1986 and contained in a written opinion dated April 25, 1986 in connection with this court's ruling that the single-creditor involuntary petition filed by PEI could not be maintained under 11 U.S.C. § 303(b)(2). Certain relevant facts will be reiterated herein.

On November 13, 1985, PEI filed a single-creditor involuntary petition under Chapter 11 of the Bankruptcy Code against Elsub. In its petition, PEI asserted that it was a creditor of Elsub, holding claims against Elsub which are not contingent as to liability, and amount in the aggregate, in excess of the value of any lien held by it on Elsub's property securing such claim, to at least $5,000.00. PEI further stated that "there are fewer than twelve persons holding claims against the Debtor that are not contingent as to liability or subject to a bona fide dispute." PEI asserted in its petition that Elsub was indebted to PEI pursuant to a promissory note dated April 3, 1984, in the initial amount of $45,384,000.00. The note allegedly had a principal balance, as of the date of the filing of the petition, of approximately $38,262,355.00, plus accrued and unpaid interest of not less than $2,348,155.00. PEI further asserted in its petition that Elsub is indebted to PEI for certain management fees in the amount of approximately $5,569,000.00 pursuant to a Confirmation Agreement dated April 3, 1984. Additionally, PEI contends that Elsub is generally not paying its debts as they become due and that an order for relief is necessary to recover to the alleged debtor's estate allegedly voidable preferences or fradulent conveyances made by Elsub. On November 14, 1985, Elsub filed a notice of motion seeking an order dismissing the involuntary petition with prejudice and seeking summary judgment in its favor on the grounds that: (1) the petition was not filed in good faith; (2) only one petitioning creditor filed the involuntary petition notwithstanding the fact that Elsub had more than twelve creditors; (3) this court lacks subject matter jurisdiction over the petition, and; (4) the petitioning creditor failed to state a claim upon which relief may be granted. Elsub, on November 14, 1985, also filed an Answer, Affirmative Defenses and a Counterclaim pursuant to 11 U.S.C. § 303(i). By its counterclaim, Elsub asserts that PEI exercised bad faith in filing the involuntary petition which resulted in injury to Elsub and its affiliates. Elsub, as part of its affirmative defenses and counterclaim under 11 U.S.C. § 303(i), asserts that PEI filed the involuntary petition in bad faith for the following reasons:

(1) PEI knew or should have known that the creditors of Elsub include the creditors of Elsinore Shore Associates (ESA), a partnership of which Elsub is a general partner, and that notwithstanding this knowledge, petitioner intentionally and willfully in bad faith filed a single-creditor petition;

(2) PEI was aware of the fact that Elsub has been paying its debts as they become due;

(3) PEI has not substantiated any preferential payment or fraudulent conveyance in its petition, and;

(4) PEI annexed its own correspondence to the involuntary petition and failed to annex responsive correspondence of Elsub, which one-sided presentation resulted in the omission of Elsub's denials of the alleged breaches and defaults.

Pursuant to a Case Management and Scheduling Order entered by this court on December 2, 1985, a hearing was conducted on December 10, 1985 for the limited purpose of determining whether PEI properly

instituted a single-creditor involuntary petition against Elsub under 11 U.S.C. § 303(b)(2).

On January 3, 1986, this court ruled that the holders of claims against the partnership, ESA, were holders of claims against Elsub, a general partner of ESA, which claims were not contingent as to liability under 11 U.S.C. § 303(b)(1). Furthermore, this court determined that the single-creditor involuntary petition could not be maintained under § 303(b)(2) of the Bankruptcy Code, since on the date of the filing of the involuntary petition Elsub had twelve or more creditors holding claims which were not contingent as to liability or the subject of a bona fide dispute. The court retained jurisdiction over the involuntary proceeding in order to allow creditors of Elsub an opportunity to join in the involuntary petition, pursuant to 11 U.S.C. § 303(c) and Bankruptcy Rule 1003(d). Pursuant to the Case Management and Scheduling Order of December 2, 1985, any subsequent motion by PEI to amend or otherwise sustain the involuntary petition will not be determined by this court, until a determination has been made, after appropriate discovery and a hearing, regarding whether the filing of the involuntary petition under 11 U.S.C. § 303(b)(2) by PEI was done in good faith. Likewise, whether intervention by other creditors will be allowed will be determined concurrently with this court's decision on the good faith issue.

In support of its present motion, PEI argues that due to the status of the law prior to the court's decision of January 3, 1986, it is impossible that PEI could have possessed the requisite knowledge or intent to have acted in bad faith in filing the single-creditor petition against Elsub. PEI argues that this court declined to follow existing precedent regarding whether partnership creditors have contingent or non-contingent claims against individual partners of the partnership for the purposes of 11 U.S.C. § 303. PEI argues that the key issue in determining whether a petitioning creditor acted in bad faith in filing an involuntary bankruptcy petition is whether the petitioner knew that the debtor had twelve or more creditors whose claims were not contingent as to liability or the subject of a bona fide dispute pursuant to 11 U.S.C. § 303(b). PEI further asserts that its knowledge of Elsub's creditors ultimately depended upon a question of law, specifically, whether the claims of partnership creditors are also claims against individual partners of the partnership, which claims are not contingent as to liability. PEI concludes that this issue was not ultimately settled until this court's decision of January 3, 1986. PEI asserts that prior to this court's January 3, 1986 decision, in states such as New Jersey which adhere to marshalling of assets doctrines, partnership creditors were held to have claims which were contingent as to liability against individual partners of the partnership. *See, e.g., In re Norman,* 32 B.R. 562 (Bkrtcy.W. D.Mo.1983).

Based upon its conclusion that it could not, as a matter of law, have acted in bad faith in filing a single creditor petition, PEI seeks to limit Elsub's discovery regarding that issue. PEI contends that the discovery demands made by Elsub are voluminous and potentially illicit. Additionally, PEI argues that production of some of the documents requested by Elsub would be violative of the attorney-client privilege and the work product privilege. Finally, PEI concludes that nothing which would be produced pursuant to the discovery demands made by Elsub would have a bearing on the good faith issue.[1]

In response to PEI's motion and arguments in support thereof, Elsub argues that a mistaken view of the law does not justify the filing of an involuntary petition in bankruptcy in bad faith. Elsub also contends that whether PEI acted in bad faith in filing a single creditor involuntary bankruptcy petition is a question of fact which requires inquiry with regard to PEI's knowledge and intentions. Finally,

---

1. As stated above, that portion of PEI's motion regarding limits on discovery into the bad faith issue has been severed from consideration herein and is the subject of a separate application.

Elsub concludes that an order summarily determining that PEI could not have acted in bad faith in filing a single-creditor petition is inappropriate since there still remain issues of material fact regarding PEI's knowledge and beliefs regarding the number of creditors of Elsub.

While this court does not deem it appropriate to comment upon the precedential effect of its January 3, 1986 ruling, it notes that while it declined to follow the reasoning and rationale of certain reported cases, such as *In re Kelsey,* 6 B.R. 114 (Bkrtcy.S. D.Tex.1980), and *In re Norman,* 32 B.R. 562 (Bkrtcy.W.D.Mo.1983), this court's decision was based upon an analysis of existing case law, statutory law and the legislative history underlying relevant sections of the Bankruptcy Code.

■ This court rejects PEI's argument that the good faith inquiry depends soley upon the state of the law regarding contingent claims as that law existed on the date PEI filed the single-creditor involuntary petition. The good faith inquiry is broader. The issue of whether good faith was exercised by a petitioning creditor may only be resolved by an examination of the totality of the circumstances surrounding the filing of the involuntary petition including, the pre-filing inquiry, knowledge, and motivations of the petitioning creditor. The issue of whether PEI acted in bad faith in filing a single-creditor involuntary petition against Elsub is a question of fact to be determined by application of certain judicially created standards.

PEI's request for an order establishing that, as a matter of law, PEI did not act in bad faith in filing the single creditor involuntary bankruptcy petition against Elsub is, in effect, a request for summary judgment in its favor as to this issue. In order for this court to grant a motion for summary judgment, the moving party, PEI herein, must demonstrate that there exists no dispute regarding issues of material fact, and that the moving party is entitled to judgment in his or her favor as a matter of law. *Hollinger v. Wagner Mining Equipment Company,* 667 F.2d 402 (3rd Cir.1982);

*Dreher v. Sielaff,* 636 F.2d 1141 (7th Cir. 1980); *Jackson Tool & Die, Inc. v. Smith,* 339 F.2d 88 (5th Cir.1964); *Toebelman v. Missouri-Kansas Pipe Line Co.,* 130 F.2d 1016 (3rd Cir.1942); *Burman v. Trans World Airlines, Inc.,* 570 F.Supp. 1303 (N.D.Ill.1983). *See also, Judson v. Peoples Bank & Trust Co. of Westfield,* 17 N.J. 67, 110 A.2d 24 (1954). Factual issues are material if they have "legal probative force as to the controlling issue." *Burman,* 570 F.Supp. at 1312. Additionally, any doubt regarding the existence of a dispute concerning an issue of material fact must be resolved against the party moving for summary judgment, and the papers supporting the motion are to be strictly scrutinized. *Dreher,* 636 F.2d at 1143–1144. The requirement that there exist no dispute regarding issues of material fact must be "strictly construed so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial." *Jackson Tool & Die, Inc.,* 339 F.2d at 91.

PEI asserted at the February 10, 1986 hearing that, by its motion, it is seeking judgment on the pleadings rather than summary judgment in its favor. Some courts have indicated that a motion for judgment on the pleadings is to be treated in the same manner as a motion for summary judgment. *Government of India v. Cargill, Inc.,* 445 F.Supp. 714 (S.D.N.Y. 1978). Judgment on the pleadings is not favored by the courts and is granted with great caution. *Day v. Grossman,* 44 N.J. Super. 28, 35, 129 A.2d 577 (App.Div.1957); *Bruno v. Long Branch,* 35 N.J.Super. 304, 114 A.2d 273 (App.Div.1955), *aff'd,* 21 N.J. 68, 120 A.2d 760 (1956). In *Government of India v. Cargill, Inc.,* 445 F.Supp. 714 (S.D.N.Y.1978), the court indicated that summary judgment and judgment on the pleadings are inappropriate in matters which are complex and where the court must decide the motion " 'on lengthy affidavits and documents and voluminous depositions.' " *Id.* at 719 (quoting 6 *Moore's Federal Practice* ¶ 56.17[27], at 56–866). Additionally, judgment on the pleadings

may not be granted when any issue of fact exists. *Liquid Carbonic Corp. v. Goodyear Tire & Rubber Co.*, 38 F.Supp. 520 (N.D.Oh.1940). Judgment on the pleadings may only be granted when the pleadings, which are challenged as failing to allege a cause of action or a defense, "are liberally construed in favor of the pleader and are clearly and palbably insufficient in a legal sense." *Travelers Insurance Co. v. Hitchner*, 61 N.J.Super. 283, 285, 160 A.2d 521 (Law Div.1960). *See also, Day v. Grossman*, 44 N.J.Super. 28, 35, 129 A.2d 577 (App.Div.1957); *Bruno v. Long Branch*, 35 N.J.Super. 304, 312, 114 A.2d 273 (App.Div. 1955), *aff'd*, 21 N.J. 68, 120 A.2d 760 (1956).

If the instant matter is labelled a motion for summary judgment, PEI would have to demonstrate, as to the question of whether PEI acted in bad faith by filing a single-creditor involuntary petition against Elsub, that there is no dispute regarding issues of material fact, and that PEI is entitled to judgment in its favor as a matter of law. Alternatively, if this matter is categorized as a motion for judgment on the pleadings, PEI would have to demonstrate that Elsub's pleadings regarding this issue, when liberally construed in Elsub's favor, are "clearly and palbably insufficient in a legal sense." This court finds that regardless of whether the instant motion is labelled a motion for summary judgment or one for judgment on the pleadings, PEI has failed to sustain its burden of proof.

With regard to the issue of joinder of creditors, courts have held that a prerequisite to allowing joinder of additional creditors to cure a defective petition is that the original petition was filed in good faith. *See, e.g., Basin Electric Power Cooperative v. Midwest Processing Company*, 769 F.2d 483 (8th Cir.1985); *In re Rite-Cap, Inc.*, 1 B.R. 740, 741 (Bkrtcy.D.R.I.1979).

Moreover, section 303 of the Bankruptcy Code provides in relevant part:

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

(1) against the petitioners and in favor of the debtor for—

(A) costs;

(B) a reasonable attorney's fee; or

(C) any damages proximately caused by the taking of possession of the debtor's property by a trustee appointed under subsection (g) of this section or section 1104 of this title; or

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

"Bad faith" is not defined by the bankruptcy code, however, bad faith has been broadly defined as:

The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

Black's Law Dictionary 127 (5th ed. 1979). The existence of bad faith is determined by an examination of the totality of the factors at issue. *See, Camelot, Inc. v. Hayden*, 30 B.R. 409, 411 (E.D.Tenn.1983).

In the case of *In re Alta Title Co.*, 55 B.R. 133 (Bkrtcy.D.Utah 1985) (*Alta*), the court was faced with the issue of whether a single creditor filed an involuntary petition in bankruptcy in good faith. Before determining the issue, the court made clear that there is a presumption that petitioning creditors have acted in good faith in filing bankruptcy petitions. Accordingly, the *Alta* court established that the burden of proving the existence of bad faith by a

preponderance of the evidence is upon the individual objecting to the filing of the bankruptcy petition. 55 B.R. at 141.

In establishing the good faith standard to be applied to determine whether a single creditor petition in bankruptcy has been filed in good faith, the *Alta* court noted that different tests have been applied by various courts to resolve the issue of good faith filing. Some courts have applied a subjective standard, pursuant to which a petitioning creditor's motivations and conduct in filing the petition are considered. Other courts have employed an objective test, pursuant to which the essential inquiry is whether a reasonable person in the position of the petitioning creditor would have filed the involuntary petition. Finally, the *Alta* court observed that some courts have analogized a claim of bad faith to a claim of fraud, and thus have required clear and convincing proof of the bad faith. 55 B.R. at 140. In *Alta,* the court did not employ any of these tests, but rather, it applied a two-pronged test comprised of an objective prong and a subjective prong. Under the objective prong of the test, the alleged debtor must prove that the petitioning creditor did not make reasonable inquiry into the facts and law surrounding the case prior to the filing of the involuntary petition. Pursuant to the subjective aspect of the test, the alleged debtor must prove that the petition was filed by the petitioning creditor in order to achieve an improper purpose. 55 B.R. at 140. *Accord, Basin Electric Power Cooperative v. Midwest Processing Company,* 47 B.R. 903, 909 (D.N.D.1984), *aff'd,* 769 F.2d 483 (8th Cir.1985) (court must consider creditor's subjective motivations in addition to its conduct to determine existence of bad faith in filing involuntary bankruptcy petition).

In *Alta,* the court expressly established that in determining whether a petitioning creditor has acted in good faith, the court "must look to the petitioning creditor's prefiling inquiry and the absence of any improper purpose in filing the petition." 55 B.R. at 141. The *Alta* court concluded that the objector to the petition in that case

failed to establish that the petitioner filed the petition in bad faith. The objector had contended that bad faith existed solely on the grounds that the petition was defective on its face in that the petitioner averred on " 'belief' " that the debtor had fewer than 12 creditors. *Id.*

The issue of whether a single creditor filed an involuntary petition in bankruptcy in good faith was also considered in the case of *In re Godroy Wholesale Co., Inc.,* 37 B.R. 496 (Bkrtcy.D.Mass.1984) (*Godroy* ). In *Godroy,* the court found that the involuntary petition was filed in bad faith.

In that case, the court considered the issue of bad faith in connection with the petitioning creditor's assertion that the alleged debtor was generally not paying its debts as they became due. The court found that prior to the filing, the petitioning creditor had questioned only one individual regarding the alleged debtor's credit reputation. 37 B.R. at 499–500. That individual, who was a "long-standing employee" of a chain of stores, had responded that, to the best of his knowledge, the debtor was paying its suppliers. Based upon this information, the petitioning creditor filed a single creditor involuntary petition against the alleged debtor, under the assumption that it was the alleged debtor's sole creditor. 37 B.R. at 500.

The *Godroy* court determined that the petitioning creditor, by failing to conduct further inquiry regarding the alleged debtor, acted in bad faith by filing the involuntary bankruptcy petition. The court noted that although Bankruptcy Rule 1003(d) allows for a single petitioning creditor to be mistaken as to the number of creditors, a single creditor cannot "commence an involuntary proceeding, without due investigation and escape a 'bad faith' finding." 37 B.R. at 500. After acknowledging that bad faith is not defined in the Bankruptcy Code and that case law defining bad faith is not prevalent, the *Godroy* court concluded that:

where [the creditor] failed to make the additional inquiries, which would not have been time-consuming nor disproportionate to the relief sought, and which if made, would have saved [the alleged debtor] the stigma of bankruptcy, [the creditor] has acted in bad faith.

37 B.R. at 500.

Furthermore, the *Godroy* court indicated that the issue of bad faith filing of an involuntary petition cannot be decided on the basis of one fact, regardless of whether the fact at first appears to be dispositive of the issue. The court stated that, "simply because a single petitioning creditor conducts a cursory investigation does not, as a matter of law, indicate bad faith. [citation omitted] The Court must investigate the facts before it." 37 B.R. at 500.

Similarly, this court will not curtail the fact-finding in the instant matter by finding at this time that PEI, as a matter of law, did not act in bad faith by filing the instant involuntary petition under 11 U.S.C. § 303(b)(2) with fewer than three supporting creditors. The fact-finding regarding this issue will be subject to valid claims of privilege.

In the case of *Basin Electric Power Cooperative v. Midwest Processing Company*, 47 B.R. 903 (D.N.D.1984), *aff'd*, 769 F.2d 483 (8th Cir.1985) (*Basin* ), the District Court for the District of North Dakota reversed a bankruptcy court decision concerning the dismissal of a single-creditor involuntary bankruptcy petition, for lack of the requisite number of creditors. In *Basin*, Basin Electric Power Cooperative (Basin) filed an involuntary petition against Midwest Processing Company (Midwest). At the time of the filing, Basin actually knew that Midwest had over 100 creditors. Nonetheless, Basin filed a single-creditor petition and made no allegation in the petition regarding the number of Midwest's creditors. 47 B.R. at 907–08. It may be found that the *Basin* case is factually distinguishable from the case presently before the court in that the petitioning creditor in *Basin* had actual knowledge of the fact that the debtor had more than 12 creditors

at the time of the filing of the involuntary bankruptcy petition. Additional discovery regarding the matter presently before the court, however, is necessary in order to make such a determination.

The *Basin* court engaged in a general discussion of the test applicable to a determination of bad faith in the filing of an involuntary bankruptcy petition. That test is relevant to the matter presently before the court. In *Basin*, the Bankruptcy Court applied an objective test to establish that Basin did not act in bad faith by filing the involuntary bankruptcy petition. The Bankruptcy Court considered only whether a reasonable person in Basin's position would have filed the involuntary petition, and refused to consider Basin's subjective motives in filing the petition. Midwest appealed the decision of the Bankruptcy Court, asserting that a test comprised of a subjective and an objective component should be employed to establish whether a creditor has acted in good faith in filing an involuntary petition in bankruptcy. The District Court for the District of North Dakota reversed the Bankruptcy Court's decision, and held that the Bankruptcy Court should have considered Basin's subjective motivations as well as its conduct in deciding the question of bad faith. In so holding, the *Basin* court stated:

> In evaluating Midwest's allegations of bad faith, the Bankruptcy Court refused to consider Basin's subjective motives in filing the involuntary petition. The Bankruptcy Court considered Basin's conduct against a standard of whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding.

> This Court is convinced that the Bankruptcy Court should have considered Basin's subjective motivations together with its conduct in reaching a determination on the question of bad faith. Though it is often difficult to ascertain a petitioning creditor's subjective motivations, other courts have considered those motivations when they could be ascertained.

Considering subjective motivations of petitioning creditors is analogous to considering possible ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. It has long been recognized that using the bankruptcy process to promote individual interests in a manner not consistent with the legislative purposes of the Bankruptcy Code is an abuse of the jurisdiction of the bankruptcy courts.

47 B.R. at 909 (citations omitted).

The District Court in *Basin* noted that the bankruptcy process cannot be utilized to promote individual interests which are inconsistent with the legislative purposes of the bankruptcy code. 47 B.R. at 909. The court analogized the consideration of the subjective motivations of creditors who file involuntary petitions to the consideration of ulterior motives of debtors who file voluntary petitions in bankruptcy. *Id.* By examining testimony of one of Basin's managers, and minutes from a meeting of Basin personnel, the District Court found that Basin filed the involuntary petition to promote an improper individual interest. Thus, the court concluded that the petition was filed in bad faith, and the petition was dismissed. 47 B.R. at 909–10.

 This court concludes that in determining whether the instant creditor has exercised bad faith in filing an involuntary petition in bankruptcy, inquiry may be made into whether the petition was ill advised or improperly motivated, whether the petitioner took affirmative steps to ensure that the petition as filed was proper, and whether the petitioner made sufficient inquiry into the facts and law surrounding the case to determine the total number of claim holders. *See, e.g., In re Godroy Wholesale Co., Inc.,* 37 B.R. 496 (Bkrtcy.D. Mass.1984). The bankruptcy court, in examining the conduct of the petitioning creditor must consider whether a reasonable person in the position of the petitioning creditor would have initiated the bankruptcy proceeding. The bankruptcy court must also ascertain the subjective motivations of a petitioning creditor, which is analogous to the consideration of the ulterior motives of petitioning debtors in voluntary bankruptcy proceedings. *See, Basin Electric Power Cooperative v. Midwest Processing Co.,* 47 B.R. 903, 909 (D.N.D.1984), *aff'd,* 769 F.2d 483 (8th Cir.1985).

In light of the foregoing, it is clear that this court must permit Elsub to conduct further inquiry into the pre-filing inquiry and objective and subjective motivations of PEI in filing the involuntary petition, and cannot find at this time that, as a matter of law, PEI did not act in bad faith in filing the involuntary petition under 11 U.S.C. § 303(b)(2) with fewer than three (3) supporting creditors. This inquiry will of course be subject to valid claims of privilege.