**In re DINO'S, INC.**

**No. C–1–94–770.**
**Bankruptcy No. 1–94–11590.**

United States District Court,
S.D. Ohio,
Western Division.

April 19, 1995.

Stacey Jay Schacter, Cincinnati, OH, for appellant Dino's Inc.

Robert Alfred Goering, Wilke & Goering, Cincinnati, OH, for appellee CIT Group/Commercial Serv.

## ORDER

SPIEGEL, District Judge.

This matter is before the Court on the Appeal of the Debtor, Dino's, Inc. (hereinafter "Dino's") (doc. 2) from a decision by the United States Bankruptcy Court for the Southern District of Ohio, Western Division, to which the Creditor, CIT Group/Commercial Services (hereinafter "CIT") made a Motion to Dismiss (doc. 4) and Dino's responded in opposition (doc. 5).

## BACKGROUND

The Debtor, Dino's, operated a men's retail clothing store at Sixth and Race Streets, Cincinnati, Ohio until it closed on September 18, 1993. During the operation of this business, Dino's and CIT had an ongoing relationship in which CIT factored payments that Dino's owed some of its clothing suppliers. The factoring arrangement meant that CIT was the entity which Dino's paid for the merchandise it received rather than each individual supplier.

In the spring of 1991, Dino's had financial difficulties. Over the next two years, Dino's fell into a pattern in which it would fall behind on its payments then pay everything off at Christmas time. On May 7, 1993, CIT filed suit against Dino's for the balance due on its account. Dino's attempted to raise money through a cash raising sale, but the City of Cincinnati required Dino's to procure a going-out-of-business sale permit once it learned of the suit CIT had instituted against Dino's. On December 7, 1993, Dino's confessed judgment in favor of CIT.

On April 29, 1994, CIT then filed a Chapter 7 Involuntary Bankruptcy Petition against Dino's. CIT was the only creditor who filed this petition. Dino's filed a Motion to Dismiss the Petition on the grounds that Dino's has more than twelve creditors, which mandates the petition be filed by no less than three creditors. After a hearing, the Bankruptcy Judge issued an Order on August 10, 1994, denying Dino's Motion to Dismiss the Petition.

Dino's filed a Notice of Appeal on August 17, 1994, and later filed its appellate brief. CIT has since filed a Motion to Dismiss the Appeal. CIT's motion asserts that the Bankruptcy Judge's Order is not an appealable issue. CIT's motion fails to address the merits of Dino's appeal.

## DISCUSSION

This appeal involves both procedural and substantive issues. The threshold issue requires this Court to determine if the Bankruptcy Court's denial of Dino's Motion to Dismiss the Involuntary Petition is an appealable order.

If the Order is appealable, the substantive issue of this appeal requires a determination of the appropriate standard for ascertaining whether an involuntary petition has been filed in bad faith. The Court would then need to determine whether the Bankruptcy Court in the present action applied the correct standard and whether the standard was applied to the facts of this case correctly.

■ In reviewing the Bankruptcy Court's decision, questions of law are reviewed *de novo. In re Batie,* 995 F.2d 85, 88 (6th Cir.1993) and *In re Isaacman,* 26 F.3d 629, 631 (6th Cir.1994). The Bankruptcy Court's findings of fact are reversed only if they are clearly erroneous. *Batie,* 995 F.2d at 88; *Isaacman,* 26 F.3d at 631; and Bankruptcy Rule 8013. "Clearly erroneous" has been defined as "against the clear weight of the evidence or [the court] 'is left with the definite and firm conviction that a mistake has been committed.'" *In re Lee Way Holding Co.,* 102 B.R. 616, 620 (S.D.Ohio 1988) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)).

A. *The Denial of Debtor's Motion to Dismiss the Creditor's Involuntary Petition is an Appealable Order.*

■ Section 158 of Title 28 of the United States Code provides a basis for appellate jurisdiction. This section provides that district courts may hear appeals from "interlocutory orders and decrees."

Bankruptcy Rules 8001 and 8003 provide the appropriate procedure for the appeal of an interlocutory order. They specifically require the filing of a motion for leave to appeal. However, Bankruptcy Rule 8003(c) provides, "If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal...."

In the present action, Dino's failed to file a motion for leave to appeal. Dino's did, however, file a notice of appeal seven days after the Bankruptcy Court's Order was rendered. Since this notice of appeal was timely filed (*See* Bankr.Rule 8002(a)), we shall, pursuant to Bankruptcy Rule 8003(c), construe Dino's notice of appeal as a motion for leave to appeal. *See In re Meeker,* 22 B.R. 745 (S.D.Ohio 1982). In *Meeker* we held:

In the interests of justice and to avoid additional expense to the parties, and in furtherance of judicial economy, this Court *sua sponte* will consider this appeal of the aforesaid order, considering same to be an interlocutory order.

■ While we have construed Dino's notice of appeal as a motion for leave to appeal, this does not end the matter. We must still decide if it is appropriate to grant such leave for appeal. Neither the Bankruptcy Code nor the Bankruptcy Rules provide standards for determining if an appeal from an interlocutory order should be reviewed. Courts have, however, relied on 28 U.S.C. § 1292(b) for guidance. This section provides that an appeal may be taken from an interlocutory order where the order involves: "(1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal ... may materially advance the ultimate termination of the litigation...." *See In re Warner,* 94 B.R. 734 (M.D.Fla.1988); *In re American Freight Sys., Inc.,* 153 B.R. 316 (D.Kan.1993); *In re Neshaminy Office Bldg. Assocs.,* 81 B.R. 301 (E.D.Penn.1987); *In re Pullman Constr. Indus.,* 143 B.R. 497 (N.D.Ill.1992); and *Escondido Mission Village L.P. v. Best Products Co.,* 137 B.R. 114 (S.D.N.Y.1992).

The substantive issue in this case is the determination of the appropriate standard for finding bad faith. This issue involves a controlling question of law, that is, what factors should the Bankruptcy Court consider in determining the existence of bad faith. It is an issue on which there is substantial ground for difference of opinion among the circuits as a study of the available cases will show. Because of the substantial harm inflicted by the filing of involuntary petitions, the immediate appeal of the Bankruptcy Court's denial of the motion to dismiss would advance the ultimate resolution of this litigation.

We therefore find that the denial of Dino's Motion to Dismiss is an appealable interlocutory order. We now turn to the substantive

issue of the appropriate standard for determining bad faith.

B. *The Appropriate Standard for Determining the Presence of Bad Faith Is One which Uses Both a Subjective and an Objective Test which Is Broader than the One Used by the Bankruptcy Judge.*

In determining the substantive issue of this case, it is important to remember "Congress intended the Bankruptcy Code as a shield for debtors, not a sword for creditors." *In re R.N. Salem Corp.,* 29 B.R. 424, 429 (S.D.Ohio 1983).

■ Title Eleven of the United States Code § 303 governs the requirements for filing an involuntary bankruptcy petition. It provides:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under sections 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $5,000 of such claims;

In this action, CIT was the sole creditor who filed the Chapter 7 Involuntary Petition. Dino's moved for dismissal of this petition on the grounds that it has over twelve creditors which under bankruptcy law requires three or more creditors to jointly file the involuntary petition. The Code and the Rules, however, do not hold a single creditor strictly liable for mistakes made in filing the petition without the requisite number of creditors. The Code and the Rules contemplate that petitions might be filed by less than three creditors based on a mistaken belief as to how many creditors the debtor actually has. *In re Alta Title Co.,* 55 B.R. 133, 136 (Bankr. D.Utah 1985). Section 303(c) of the Code and Bankruptcy Rule 1003(b) provide a mechanism for curing the defective petition. Section 303(c) provides, "After the filing of a petition under this section but before the case is dismissed or relief is ordered, a creditor holding an unsecured claim that is not contingent, ... may join in the petition with the same effect as if such joining creditor were a petitioning creditor...."

However, this joinder is not without restriction. Courts have consistently realized the potential for abuse in allowing a single creditor to force a debtor into bankruptcy. Despite the liberal joinder provisions of the Code, the courts have held "[t]he three creditor requirement is not a meaningless formality that a creditor may ignore until after filing the petition." *Alta,* 55 B.R. at 137 (quoting *Basin Elec. Power Coop. v. Midwest Proc. Co.,* 769 F.2d 483, 486 (8th Cir.1985)). In fact, the courts have held "that an essential prerequisite for allowing joinder of additional creditors to cure a defective petition is that the original petition was filed in good faith, and not as a fraudulent attempt to confer jurisdiction upon the court with a view of being later supported by intervention of other creditors." *Alta,* 55 B.R. at 137.

■ The courts have, however, differed on what constitutes "bad faith" in the filing of a defective involuntary petition. "Bad faith" is not defined in the Code or the Rules. *Camelot v. Hayden,* 30 B.R. 409, 411 (E.D.Tenn. 1983). In the present case, the Bankruptcy Judge found that "the bad faith requirement is one that borders on a finding of either fraud or some type of absolute disregard for the facts or some sort of absolute ill will and ill motive...." (tr. at 52; 7/28/94).

Yet, a much broader view of "bad faith" is espoused by many bankruptcy, district, and circuit courts. In fact, some of the cases cited by the Bankruptcy Judge in this action, such as *U.S.F. & G. v. DJF Realty & Suppliers,* 58 B.R. 1008, 1011 (N.D.N.Y.1986), follow a broader view of what constitutes "bad faith." While the standard adhered to by the Bankruptcy Judge in this action would cer-

tainly constitute "bad faith," this Court finds that the Bankruptcy Judge erred in not considering the broader standard. Therefore, this Court adopts the broader standard as the appropriate standard for determining the presence of bad faith in the filing of an involuntary petition.

The ability to force a debtor into bankruptcy in the hands of a single creditor is a very dangerous weapon. It usually means the end of credit for the business affected. In the present action, Dino's, Inc. went out of business prior to the filing of the involuntary petition, but a related business, Dino's of Kenwood, Inc., has seen some of its credit withdrawn since this petition was filed (tr. at 26; 7/28/94).

■ The policy behind the rules requiring three petitioning creditors are: (1) "the fear that involuntary bankruptcy might be used by one or two recalcitrant creditors as a means of harassing an honest debtor"; and (2) "the possibility that the threat of an involuntary petition would be used to compel the debtor to make preferential payments to one or more litigious creditors." *In re Earl Sims, Jr.,* 994 F.2d 210, 217 (5th Cir.1993) (quoting 2 Collier on Bankruptcy, ¶ 303.08[17][a], at 303–42 (1993)). For these reasons, we believe it is appropriate to consider other factors, in addition to those considered by the Bankruptcy Judge in his opinion, in determining bad faith.

■ Bad faith can be measured by what the petitioning creditor knew or should have known about the number of debtor's creditors at the time of filing the petition. *In re Crown Sportswear, Inc.,* 575 F.2d 991 (1st Cir.1978); *Basin Elec. Power Coop. v. Midwest Proc. Co.,* 769 F.2d 483 (8th Cir.1985). Bad faith can be based on knowingly alleging false information, or by reckless disregard of the truth or falsity of the information. *Myron M. Navison Shoe Co. v. Lane Shoe Co.,* 36 F.2d 454, 459 (1st Cir.1929).

■ A standard for determining bad faith, which requires both a subjective and an objective inquiry, has gained support in many different jurisdictions. *See Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.,* 986 F.2d 709 (4th Cir.1992); *In re*

*Alta Title Co.,* 55 B.R. 133 (Bankr.D.Utah 1985); *U.S.F. & G. v. DJF Realty & Suppliers,* 58 B.R. 1008 (N.D.N.Y.1986); *In re Elsub Corp.,* 66 B.R. 189 (Bankr.D.N.J.1986); *In re Earl Sims, Jr.,* 994 F.2d 210 (5th Cir.1993); and *In re Godroy Wholesale Co.,* 37 B.R. 496 (Bankr.D.Mass.1984). Under this standard, the objective prong of the inquiry requires the debtor to prove that the petitioning creditor did not conduct a reasonable inquiry into the law and the facts surrounding the case prior to filing the involuntary petition. *Elsub,* 66 B.R. at 194.

The court in *Alta* analogized the duty to conduct a reasonable investigation into the law and the facts of a case with that of the Federal Rules of Civil Procedure, Rule 11. The court looked to the advisory committee's note to Rule 11 and stated the "standard 'is one of reasonableness under the circumstances,' but 'stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule.'" (citation omitted) "The absence of such a prefiling inquiry will generally support a finding of bad faith in single petitioning creditor cases." *Alta,* 55 B.R. at 140–41. Another way of stating the objective prong of this bad faith inquiry is to determine whether a reasonable person in the petitioning creditor's position would have filed the bankruptcy petition. *DJF Realty,* 58 B.R. at 1011.

The subjective aspect of this bad faith inquiry requires the debtor to prove that the petitioning creditor filed the petition to achieve an improper purpose. *Atlas,* 986 F.2d at 709. An example of an improper purpose for filing an involuntary bankruptcy petition is debt collection. *Atlas,* 986 F.2d at 716.

The danger of involuntary bankruptcy cannot be overlooked by the courts.

An allegation of bankruptcy is a charge that ought not be made lightly. It usually chills the alleged debtor's credit and his source of supply. It can scare away customers. It leaves a permanent scar even if promptly dismissed. It is also obvious that the use of the bankruptcy court as a

routine collection device would quickly paralyze this court.

*Godroy,* 37 B.R. at 499 (quoting *In re SBA Factors of Miami,* 13 B.R. 99, 101 (S.D.Fla. 1981)).

Based on the foregoing analysis, this Court adopts the objective-subjective standard for determining bad faith in the filing of an involuntary petition. Since CIT has not addressed the merits of this appeal, this Court will refrain from deciding the merits of this appeal.

### CONCLUSION

The Court finds that Dino's appeal is well taken. The Court also finds that the Bankruptcy Court applied too narrow of a standard in deciding the substantive issue of this appeal.

Accordingly, we VACATE AND REMAND the Bankruptcy Court's denial of Debtor's Motion to Dismiss for reconsideration in accordance with this opinion.

SO ORDERED.