**In re APACHE TRADING GROUP, INC., Fort Apache Performance Brokerage, Inc., and Juan Almeida, Debtors.**

**Bankruptcy Nos. 95–11127–BKC–AJC to 95–11129–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Jan. 19, 1999.

See also 229 B.R. 887.

Paul L. Orshan, Harry K. Bender, Miami, FL, on behalf of Ronald Meixner.

Herbert L. Stettin, David Goldstein, Miami, FL, on behalf of former alleged debtors.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

The issue before the Court is whether certain involuntary bankruptcy petitions were filed in bad faith pursuant to 11 U.S.C. § 303(i)(2).

Ronald Meixner, together with Arthur W. Balogh, Jr. and James R. Bell, filed involuntary petitions under 11 U.S.C. § 303 against Juan Almeida, Fort Apache Performance Brokerage, Inc. and Apache Trading Group, Inc. on March 13, 1995. As of the filing date of the petitions, Apache Trading and Apache Performance were inactive companies which had been administratively dissolved. Thereafter, Elizabeth Andrus, the Chapter 7 Trustee for the estate of Marine Turbine Technologies, Inc., Ted McIntyre, Joseph P. Handy and Mike Britton filed joinders in the involuntary petitions. Mr. Britton later withdrew his joinder.

The involuntary petitions were disputed. Following an extensive trial, Chief Judge A. Jay Cristol dismissed the involuntary petitions in a Final Judgment entered on July 8, 1997. In dismissing the involuntary petitions, Judge Cristol made the following findings: The petitioning creditors failed to prove that the alleged Debtors were not generally paying their debts as they became due. The alleged Debtors carried their burden of proving that the debts of Mr. Balogh, Mr. Bell, Ms. Andrus, Mr. McIntyre and Mr. Handy were the subject of bona fide disputes. Mr. Meixner was determined to have an oversecured claim against Mr. Almeida, but he did not have claims against Apache Performance or Apache Trading. The Court determined that Mr. Balogh and Mr. Bell were not credible witnesses. Mr. Meixner did not testify at the trial on the involuntary petitions. The involuntary petitions were dismissed with prejudice, and the Court retained jurisdiction to award costs and attorneys' fees pursuant to 11 U.S.C. § 303(i).

In an Order dated April 14, 1998, Judge Cristol found that the involuntary petitions were filed in bad faith and granted the motions of the former involuntary Debtors to recover costs, attorneys' fees, damages and punitive damages under § 303(i)(1) and (2) against the petitioning and joining creditors. Judge Cristol denied any recovery against Peter J. Yanowitch, a former attorney of Mr. Meixner and his company, Acme Rocket, Inc. This Order was modified on rehearing by an Order dated May 29, 1998, wherein Judge Cristol reinstated the claim against Mr. Yanowitch and vacated the findings of bad faith. The portion of the April 14, 1998, Order holding the petitioning and joining creditors liable for fees and costs pursuant to § 303(i)(1) remained in full force and effect.

Judge Cristol bifurcated the trial of the § 303(i)(2) damage and punitive damages claims in order to first determine whether the petitioning and joining creditors filed the petitions in bad faith. The claims against Mr. Handy were settled prior to trial. The claims against Mr. Yanowitch were dismissed following opening statements. The claims against Mr. Bell and Mr. Balogh were settled after the first day of trial for $15,000 each and for the agreement of Mr. Balogh and Mr. Bell to testify truthfully at trial. As a result of the dismissal of Mr. Yanowitch and the settlements with Mr. Balogh and Mr. Bell, the trial on the bad faith claims proceeded against Mr. Meixner, Mr. Andrus, and Mr. McIntyre. No evidence was presented as to the bad faith of Ms. Andrus or Mr. McIntyre.

■ There is a presumption of good faith in favor of petitioning creditors in an involuntary proceeding under § 303. The Debtor or other objecting party has the burden of proving bad faith by a preponderance of the evidence, and the Debtor must separately prove bad faith by each petitioning creditor against whom damages are sought under § 303(i)(2). *In re Reveley*, 148 B.R. 398, 406 (Bankr.N.D.N.Y.1992). The Bankruptcy Code does not define the term "bad

faith". As Judge Cristol noted in his April 14, 1998, Order:

> There are five accepted tests for determining bad faith. These tests are (1) the subjective test; (2) the improper purpose test; (3) the objective test; (4) the improper use test; and (5) the combined test. A sixth test, called "the nose tests" has also been proposed by some courts. *Collier on Bankruptcy,* 15th Edition (Matthew Bender & Co., Inc. 1996).
>
> . . . .
>
> The subjective test and the improper purpose test focus on the petitioner's motive for filing an involuntary bankruptcy. An improper motive, such as harassing the debtor or collecting an unpaid obligation, is subjective evidence of bad faith.
>
> . . . .
>
> The objective test requires the Court to assess whether a reasonable person in the creditor's position would have acted as the petitioning creditors did. The reasonableness of the creditor's action in filing the involuntary petition must be scrutinized.
>
> . . . .
>
> The improper use test looks at whether the creditor's conduct takes disproportionate advantage of other creditors. This test finds bad faith when a petitioning creditor uses involuntary bankruptcy procedures to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining advantages. This particularly applies when the petitioner could have advanced its own interests in a different forum.
>
> . . . .
>
> The "nose test" is the most broad of all the standards. It considers all the other standards and operates on the premise that "if it smells like bad faith, it's got to be bad faith." *In re Better Care, Ltd.,* 97 B.R. 405, 409 (Bankr.N.D.Ill.1989). This test considers the totality of the circumstances.

The combined test evaluates "bad faith by the subjective and objective standards contained in Rule 9011 of the Federal Rules of Bankruptcy Procedure." *In re Reveley, supra,* 148 B.R. at 407.

The Court does not find it necessary to choose one of the above tests over the others. Instead, the Court will employ a totality of the circumstances analysis which incorporates the factors described in the above-referenced tests.

At the outset, it is important to remember that Mr. Meixner, unlike the other petitioning creditors, did have a valid claim against Mr. Almeida in the amount of $323,585.00 as of the filing date. This claim was oversecured based on Judge Cristol's prior finding regarding the value of the collateral securing Mr. Meixner's claim. However, the parties agree that the collateral—three cigarette racing boats with turbo jet engines—appeals to a very limited market, and liquidating the collateral has proven to be problematic.

It is also undisputed that Mr. Almeida was having serious financial difficulties at the time the involuntary petition was filed. Fort Apache Marina had an outstanding mortgage with United National Bank for which Mr. Almeida was a personal guarantor, and Fort Apache Marina was losing money and having trouble meeting its monthly obligations, including its mortgage, for the period preceding the filing date. Mr. Almeida's American Express credit card was canceled or suspended prior to the filing date due to a dispute over $50,000.00. In addition, Mr. Almeida admitted that he had personal checks returned for insufficient funds in virtually every month in the year preceding the filing date. Mr. Almeida also admitted that he owed the Internal Revenue Service $185,-000.00, and that the IRS had imposed a lien on one of his companies. Mr. Almeida also told Mr. Meixner on several occasions that he was "broke" and Mr. Meixner was present when Mr. Almeida sold a shoebox full of expensive watches to raise funds.

Judge Cristol previously determined that the petitioning creditors failed to prove that Mr. Almeida was generally not paying his debts as such debts became due. However, it is undisputed that Mr. Almeida was not paying his debt to Mr. Meixner. Despite obtaining a stipulation for settlement from Mr. Almeida in a 1994 state court proceed-

ing, Mr. Almeida made no payments to Mr. Meixner towards this debt.

■ Legitimate reasons for filing an involuntary bankruptcy petition include the invocation of the protection of the Bankruptcy Court to protect the petitioning creditors and the other creditors, and the investigation, accounting for, and protection of the debtor's assets. *In re CLE Corp.,* 59 B.R. 579, 584 (Bankr.N.D.Ga.1986). In this proceeding, there was evidence that the petitioning creditors were concerned about the dissipation of assets by Mr. Almeida, including the SPT–16 submarine and a Bell helicopter. In particular, Mr. Balogh testified that he was informed by a friend from Fort Apache that the submarine had been moved out of the marina and was being transported somewhere. Both Mr. Balogh and Mr. Bell testified that they filed the involuntary bankruptcy in order to secure assets. According to Mr. Bell, "I thought we were going to possibly get a trustee that was going to secure assets and make sure that nothing got sold without the possibility of the people being paid that were owed money."

The evidence before the Court supports Mr. Meixner's claim that the petitioning creditors conducted a reasonable inquiry before they filed the involuntary petition. There was a three-month period between the petitioning creditors' initial meeting with their bankruptcy attorney, Mr. Gregory Martin, and the filing of the bankruptcy petition. During this period, Mr. Martin contacted a boat broker in order to obtain an independent appraisal of the value of the collateral securing Mr. Meixner's valid claim. The information from the boat broker indicated that Mr. Meixner was undersecured, and that the collateral was deteriorating. He also conducted a UCC search, a search with the Secretary of State's office for information on the corporations, and a name search on Mr. Almeida to determine if there were judgments against Mr. Almeida. Mr. Martin also had discussions with Mr. Hustead, an attorney who was involved in mortgage foreclosure litigation against Fort Apache. Mr. Almeida was a personal guarantor on the mortgage obligations of Fort Apache. Mr. Martin and Mr. Hustead dis-

cussed the financial condition of both Mr. Almeida and Fort Apache. Based upon his investigation, Mr. Martin, an experienced bankruptcy practitioner, concluded that the involuntary bankruptcy petitions were being filed for a legitimate purpose, i.e. to ensure that the assets of Mr. Almeida were not being dissipated and would, therefore, be available for distribution to holders of valid claims.

■ Reliance on counsel does not excuse bad faith in the filing of an involuntary petition, but it may be considered on the favorable side of the ledger in such a consideration. *In re Reveley, supra,* 148 B.R. at 408–09. In this proceeding, the petitioning creditors' attorney, Mr. Martin, advised them that an involuntary bankruptcy petition was the best course of action to prevent the further dissipation of Mr. Almeida's assets and to provide for the court-supervised administration of these assets. Mr. Meixner, in particular, was subject to the sway of Mr. Martin's advice because he was a foreign national unfamiliar with the American legal process. Mr. Meixner explained his participation in the involuntary bankruptcy against Mr. Almeida as follows: "It was advise of my counsel. Obviously, there was no payment coming. The boats were not to sell for this price and I asked for the next step, the next possibility, and under the advice of Mr. Yanowitch, he contacted Mr. Greg Martin and the idea was for the bankruptcy, whatever it means."

■ In support of his argument that the involuntary bankruptcy petitions were motivated by malice and ill will, Mr. Almeida points to several expressions used by Mr. Meixner. It was not unusual for Mr. Meixner to use expressions such as "You dance with the devil, you get burned," and "A thousand Prussian cannons would be leveled in the direction of an enemy and the ensuing volley would be pretty deadly," and the evidence established that Mr. Meixner used these expressions in regard to Mr. Almeida. However, the evidence also established that Mr. Meixner frequently sprinkled these "catchall kind of phrases" in his conversations. Mr. Almeida was not the only butt of such comments from Mr. Meixner, but he

was the only person who Mr. Meixner filed an involuntary bankruptcy against. Standing alone, these comments from Mr. Meixner do not rise to the level of spite, malice, or desire to embarrass the debtor necessary to establish bad faith.

For the foregoing reasons, the Court finds that the involuntary bankruptcy petitions were not filed in bad faith. Therefore, Mr. Almeida is not entitled to any damages proximately caused by such filing or punitive damages.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.