**In re Anthony J. BALLATO, Debtor.**

No. 00–00872–8P7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 19, 2000.

Donald J. Schutz, St. Petersburg, FL, for Alleged Debtor.

**ORDER ON PETITIONER'S MOTION FOR SUMMARY JUDGMENT ON INVOLUNTARY PETITION (DOC. NO. 20) AND ORDER ON DEBTOR'S MOTION TO DISMISS (DOC. NO. 13)**

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTERS under consideration in this involuntary Chapter 7 case are Petitioner, Peter Paul Mitrano's Motion for Summary Judgment on the Involuntary Petition and the Debtor, Anthony J. Ballato's Motion to Strike and Dismiss the Petition and Award Sanctions (Motion to Dismiss). The Court reviewed the Motion and the record, heard argument of counsel and now finds as follows:

On January 21, 2000, the Petitioner filed the instant involuntary Chapter 7 case against the Debtor. The Petition, Official Form No. 5, merely states the essential allegations required by Section 303(h)(1) of the Bankruptcy Code for filing an involuntary case. The Debtor filed an Answer, Affirmative Defenses and a Request for Fees and Costs, denying all of the allegations in the Petition. The Affirmative Defenses basically allege that the Debtor is not personally indebted to the Petitioner; the Petitioner is aware of this position; and the case was filed for the purpose of preventing the Debtor from transferring his assets and as leverage to collect a debt. The Debtor alleges that he is paying his undisputed debts in the ordinary course of business and that the Petition was filed in bad faith.

In support of the Motion for Summary Judgment, Petitioner filed five Motions seeking leave to file affidavits under seal. The Motions were formally denied with orders entered on April 5, 2000, and April 11, 2000.

Petitioner contends that the Debtor is not generally paying his debts as they come due. Petitioner initially alleged that the Debtor was indebted to an entity identified as the "Blue Book" and to an individ-

ual named, Joseph Montaro. The Debtor's Answer denies these allegations and documents that the obligation to Blue Book was a debt owed by Everglades Industries, Inc. Further, although Montaro had sued the Debtor, a judgment was entered in the suit against Hydro Technologies, Inc., and not against the Debtor.

In light of this development, the Petitioner realized that he had to find creditors to whom the Debtor was actually indebted. Petitioner embarked on an extensive search and obtained several affidavits that the Petitioner contends sufficiently establish that the Debtor generally is not paying his debts as they become due.

The alleged debts basically fall into three categories—(1) health-related hospital and doctor bills; (2) Petitioner's claim in the amount of $79,922.00 for legal services rendered to the Debtor; and (3) telephone charges in the amount of $413.54 incurred in connection with the corporate use of the Debtor's cell phone.

The Debtor's Affidavit states that while he received the medical services underlying the debts, he assumed that the medical bills were paid by his insurance carrier, Blue–Cross Blue–Shield (Blue–Cross). This assumption stems from his submission of a claim to Blue–Cross. The claim was never denied and never again was he billed for the charges. One medical bill submitted to the Veteran's Administration was denied because it was for medical conditions unrelated to the Debtor's military service. The bill was sent to a secondary insurance carrier and as far as the Debtor knows, the bill has been paid. In any event, the Debtor was not billed for this charge either.

Certain debts date back to 1991 and others are supported only by inadmissible affidavits where the existence of the debt is not based on the personal knowledge of the affiant but on hearsay. See Affidavit of Rosemary Rogers filed March 3, 2000; Affidavit of James Cassesas, filed on March 29, 2000.

Concerning Petitioner's claim, Debtor's Affidavit states that the Debtor denies being indebted to Petitioner in any amount; that he had no written agreement for the payment of fees; and that their understanding was that Petitioner would seek to recover his fees from the plaintiff in the litigation. Also, in his Answer, the Debtor states that when the Petitioner learned that the Debtor might receive funds from the sale of property, Petitioner abandoned his collection efforts against the plaintiff and stated that he would dismiss this involuntary case if the Debtor pays him $100,000.00.

Nothing in this record contradicts the Debtor's statements. The offer to dismiss an involuntary case for payment of money is a felony under Title 18 U.S.C. § 152. Thus, if the Debtor's allegation is true, then Petitioner committed a crime.

At the conclusion of the hearing on the Motion for Summary Judgment, Petitioner attempted to file an additional affidavit. Debtor's counsel strenuously objected, stating that the filing of an affidavit at the hearing was untimely and if permitted, Debtor's counsel should also be given an opportunity to file opposing affidavits. This Court agreed and granted both sides leave to make additional submissions within ten days.

Section 303(h)(1) of the Bankruptcy Code provides that an order for relief may be entered on an involuntary basis if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute..." Creditors holding claims which are in "bona fide dispute" cannot be petitioning creditors. See *In re Ramm Industries, Inc.*, 83 B.R. 815, 822 (Bankr.M.D.Fla.1988). The determination of whether a claim is in bona fide dispute requires only a determination of whether there exists a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the application of law to undisputed facts. *Id.*,

citing *Matter of Busick,* 65 B.R. 630, 637–38 (N.D.Ind.1986), affirmed 831 F.2d 745, 749–50 (7th Cir.1987).

■ In this case, Petitioner's claim is clearly in bona fide dispute. No written agreement exists between the Debtor and the Petitioner. Genuine issues of material fact exist regarding whether the Petitioner agreed to seek the payment of his fees solely from other parties to the lawsuit. Thus, Petitioner is ineligible to be a petitioning creditor in this case.

■ Further, in considering the question of whether the Debtor is generally not paying his debts as they become due in accordance with the standards set forth under Section 303(h), the Court is required to "[c]ompare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the Debtor's conduct of its financial affairs." *Ramm Industries,* 83 B.R. at 824, quoting *In re The Leek Corporation,* 52 B.R. 311, 314 (Bankr.M.D.Fla.1985). Further, in determining whether a debtor is not generally paying its debts as they become due, debts subject to a bona fide dispute may not be considered by the Court in making this determination. *Ramm Industries,* at 822.

■ In this case, the Debtor had a reasonable basis for nonpayment of the debts. In each case, the Debtor either believed that the debt had been paid or that the debt was in dispute. He reasonably believes that his medical bills had been paid by insurance. He contends that the Petitioner had waived his attorney's fees. Finally, he contends that the cell phone bill was paid as a corporate debt. Each of these debts is in bona fide dispute and cannot be considered in determining whether the Debtor is generally paying his debts as they come due. Further, the Petitioner has presented no evidence regarding the number of debts unpaid by the Debtor each month, the amount of the delinquency, the materiality of the non-payment, and the nature of the Debtor's conduct of his financial affairs. Under these circumstances, this Court is satisfied that the entry of an order for relief would be inappropriate. See *In re Caucus Distributors, Inc.,* 106 B.R. 890 (Bankr. E.D.Va.1989).

■ It has been generally recognized that petitioning creditors should carefully examine the risks undertaken when considering filing an involuntary petition. *In re Landmark Distributors, Inc.,* 189 B.R. 290, 306 (Bankr.N.J.1995). This is especially true when the involuntary case is filed by a single petitioning creditor. See *In re Dino's, Inc.,* 183 B.R. 779 (S.D.OH. 1995).

> The filing of an involuntary petition ... is extreme in nature and carries with it serious consequences to the alleged debtor, examples of which include loss of credit standing, interference with general business affairs and public embarrassment.

*Landmark Distributors,* 189 B.R. at 306, quoting *In re McDonald Trucking Co., Inc.,* 76 B.R. 513, 516 (Bankr.W.D.Pa. 1987).

In recognition of the serious nature of filing an involuntary petition, Section 303(i) provides for sanctions upon dismissal of an involuntary petition, stating,

(i) If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment——

(1) against the petitioners and in favor of the debtor for—

(A) costs; or

(B) reasonable attorney's fee;

(2) against any petitioner that filed the petition in bad faith, for—

(A) any damages proximately caused by such filing; or

(B) punitive damages.

11 U.S.C. § 303(i).

 There is no Eleventh Circuit Court of Appeals decision on awarding attorney's fees in involuntary cases in the absence of bad faith. See *Matter of Scrap Metal Buyers of Tampa, Inc.*, 233 B.R. 162 (Bankr.M.D.Fla.1999). The decision to award Section 303(i)(1) attorney's fees and costs falls squarely within the discretion of the trial court and a finding of bad faith is not necessary to a Section 303(i)(1) award. *Id.* at 164. When an involuntary petition is dismissed, whether with a bad faith finding or not, an involuntary debtor's motion for attorneys' fees and costs under Sec. 303(i)(1) raises a rebuttable presumption in favor of the Debtor that fees and costs are authorized. The involuntary debtor bears the burden of showing the fees requested are reasonable. It is then the petitioning creditors' burden to establish, under the totality of the circumstances, that factors exist which overcome the presumption, and support the disallowance of fees. *Scrap Metal Buyers*, 233 B.R. at 166 (adopting reasoning in *In re Ross*, 135 B.R. 230, 236–39 (Bankr.E.D.Pa.1991)).

Although the lack of bad faith is not expressly referenced as a requirement for an involuntary petition, section 303(i)(2). However, Section 303(i)(2) expressly provides for an award of compensatory damages or punitive damages for bad faith filings. See *In re Salmon*, 128 B.R. 313, 318–19 (Bankr.M.D.Fla.1991).

 The petitioning creditor's bad faith is a factual issue. See *Caucus Distributors*, 106 B.R. at 923. Good faith is presumed and the debtor has the burden of proving bad faith by a preponderance of the evidence. Id. There are five accepted tests for determining bad faith: (1) the subjective test; (2) the improper purpose test; (3) the objective test; (4) the improper use test; and (5) the combined test. See *In re Apache Trading Group, Inc.*, 229 B.R. 891 (Bankr.S.D.Fla.1999); *Landmark Distributors*, 189 B.R. at 309. Under the "improper use" test, bad faith is found "when a petitioning creditor uses involuntary bankruptcy proceedings in an attempt to obtain a disproportionate advantage for itself, rather than to protect against other creditors obtaining disproportionate advantages, particularly when the petitioner could have advanced its own interests in a different forum." *See In re K.P. Enterprise*, 135 B.R. 174, 179 (Bankr.Me.1992). The "improper purpose" test, finds bad faith based upon the petitioner's improper motivation for filing the petition. *Landmark Distributors*, 189 B.R. at 309. Cases under this line of reasoning have emphasized that the petition was motivated by ill will, malice or for the purpose of harassing the debtor. *Id.* at 309–10 (citations omitted).

The "objective test" questions whether a reasonable person would have filed the involuntary petition under the same circumstances. Most case law examines bad faith on an objective basis. See *Caucus Distributors*, 106 B.R. at 923–24. The "subjective test" looks to the subjective motivation of the petitioning creditor for the filing. The standard for determining bad faith by using both the objective and the subjective test has gained support in many jurisdictions. See *Matter of Sims*, 994 F.2d 210 (5th Cir.1993); *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709 (4th Cir.1993); *In re Elsub Corp.*, 66 B.R. 172, 189 (Bankr.N.J. 1986); *In re Wavelength, Inc.*, 61 B.R. 614, 620 (9th Cir. BAP 1986). *Camelot, Inc. v. Hayden*, 30 B.R. 409, 411 (E.D.Tenn.1983).

 This Court finds that Petitioner filed the involuntary Petition in bad faith. This is a two party dispute between the Debtor and the Petitioner. The Petitioner failed to presented any evidence that in general, the Debtor was not paying his debts as they come due. The Petitioner, an attorney, misrepresented to this Court that he was a judgment creditor when no judgment was ever entered against the Debtor. Further, the Petitioner represented that the other initial creditor was a

creditor of the Debtor when clearly the creditor was a creditor of the Debtor's corporation. A reasonable person would not have filed this case under these circumstances. It is also clear that the Petitioner's sole purpose in filing this case was to promote his collection efforts.

Accordingly, it is

ORDERED, ADJUDGED and DECREED that the Petitioner's Motion for Summary Judgment on the involuntary Petition is hereby denied. It is further

ORDERED, ADJUDGED and DECREED that the Debtor's Motion to Dismiss be, and the same is hereby granted. The above-captioned case is hereby dismissed, however, the Court reserves jurisdiction to enter an order pursuant to 11 U.S.C. § 303(i)(1) and (2). It is further

ORDERED, ADJUDGED and DECREED that a final evidentiary hearing is hereby scheduled before the undersigned in Courtroom 9A, Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Tampa, Florida on June 27, 2000 at 10:00 am to consider sanctions under 11 U.S.C. § 303(i)(1) and (2).