**In re Jack M. SCHLOSS, Debtor.**

**In re Frances Schloss, Debtor.**

**Nos. 00–2525–9P7, 00–2526–9P7.**

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Dec. 28, 2000.

Charles M. Tatelbaum, Johnson, Blakely, Pope, Bokar, Tampa, FL, for debtors.

### ORDER ON DEBTORS' MOTION FOR SANCTIONS UNDER 11 U.S.C. § 303(i) (DOC. # 15)

ALEXANDER L. PASKAY, Bankruptcy Judge.

It is not an unexpected and unusual segway to an involuntary dismissal of an involuntary Petition that a Debtor, after succeeding to obtain a dismissal of the involuntary case, files a Motion for Judgment against the Petitioners for costs and reasonable attorneys fees pursuant to 11

U.S.C. §§ 303(i)(1)(A) and (B). In addition, he may also seek compensation for damages proximately caused by filing the involuntary Petition and even for punitive damages on the basis that the Petition was filed in bad faith. 11 U.S.C. § 303(i)(2).

This is precisely what happened in these involuntary cases, filed by Palm Coast Recovery Inc. (Palm Coast) against Jack M. Schloss and his wife Frances Schloss (Debtors) on February 22, 2000. In due course, the Debtors filed a Motion to Dismiss the Petition contending, *inter alia,* that the Debtors have more than 12 creditors and therefore, a single creditor, Palm Coast, has no standing to maintain or prosecute an involuntary case against them. The Motion was scheduled for a hearing in due course and on July 13, 2000, this Court entered an Order and granted the Debtors' Motion to Dismiss and dismissed the above captioned involuntary cases. The Court dismissed the involuntary cases on the basis that there were in fact more than 12 creditors of these Debtors; therefore, one single creditor cannot maintain an involuntary case against these Debtors.

The Order of Dismissal retained jurisdiction to consider the Motion of the Debtors for sanctions and fees against counsel for Petitioning Creditors. This Court scheduled a hearing to receive competent evidence on the limited issue of whether the involuntary Petition was filed in bad faith which warrants the imposition of sanctions pursuant to 11 U.S.C. § 303(i).

The Motion for Sanctions was filed on May 12, 2000. In their Motions, the Debtors contended that as of the date of the filing of the involuntary case against them by Palm Coast, Debtors had more than 12 creditors; that Palm Coast knew or should have known that the Debtors had more than 12 creditors; that Palm Coast was using the Bankruptcy Court by filing their petitions for an improper purpose and thus violated 18 U.S.C. § 152 (Chapter 9, Bankruptcy Crimes 18 U.S.C. § 151 et seq.) and 18 U.S.C. § 1961 et seq. (Racketeer Influenced and Corrupt Organizations) (sic).

In due course, Palm Coast filed its response to the Motion for Sanctions which also included a response to the Emergency Motion to Dismiss filed by the Debtors. Palm Coast basically denied that the Petitions were filed in bad faith and stated that relying on the testimony of Jack Schloss in his deposition, they were justified to conclude that the Debtors had no other creditors other than Palm Coast and Barnett Bank of Naples, N.A. In its Response, Palm Coast also contended that the aggregate amount of debt owed by the Debtors is greater than $10,775.00 and that the Debtors are generally not paying their debts when they're due and the Petition was filed in good faith.

At the commencement of the Final Evidentiary Hearing scheduled on the Motions, this Court announced that based on applicable law, the sanctions provided for by 28 U.S.C. § 1927 are not applicable in a bankruptcy case or proceeding. Therefore, the Court announced that Debtor's Motion for Fees and Costs Against counsel for Petitioning Creditor Pursuant to 28 U.S.C. § 1927 filed May 30, 2000, would be denied, and on October 16th entered its order denying this Motion. This left for consideration the original Motion filed by the Debtors on May 12, 2000, against Palm Coast.

At the Final Evidentiary Hearing, the Court heard testimony of witnesses and considered the documentary evidence offered and introduced into evidence and based on the record this Court now finds and concludes as follows:

In the early 1980's, Jack and Frances Schloss operated two corporations: Wreck–O–Mend Auto Body and Cents–

Able Rental, a used vehicle rental business. Both of these businesses failed and Jack Schloss was forced to liquidate all assets of these businesses. Barnett National Bank, N.A., who apparently held the mortgage on the business premises, foreclosed its mortgage. In connection with the foreclosure proceeding, Barnett also sought and obtained a money judgment against the Debtors in the amount of $50,000.00. While all debts incurred in connection with the operation of these businesses were paid, the Debtors did not pay the money judgment obtained by Barnett and the judgment obtained by Barnett Recovery Corporation (Barnett Recovery).

It further appears from the record that Barnett Recovery obtained a money judgment against the Debtors almost 10 years later for a claimed deficiency in connection with the repossession of a vehicle in the amount of $6,782.73 (Deb. Exh. 1 and 2). Although the Debtors were successful initially to obtain an order vacating and setting aside the money judgment obtained by Barnett Recovery, ultimately due to the attorney's failure to properly represent their interests, the judgment was reinstated. As a result, it is without dispute that the $50,000.00 money judgment obtained by default by Barnett representing attorney's fees and costs in connection with the foreclosure proceeding and Barnett Recovery's judgment of $6,782.73 are admittedly still unsatisfied. This is the judgment which on May 18 Barnett Banks, N.A., successor to Barnett Recovery assigned to Palm Coast Recovery Corporation (Deb. Exhibit 1 & 2).

Palm Coast Recovery Corp. is a corporation formed by Roger Hurd and his wife in 1991. The corporation was formed for the purpose of engaging in the business of purchasing portfolios of uncollected judgments and since its inception has purchased more than 7000 judgments, among them the Schloss judgment purchased from Barnett in the amount of $6,782.73. Roger Hurd (Hurd) is also the senior partner of the firm of Hurd, Horvath & Dinkin, P.A. Initially the Schloss judgment was treated like any other account, following the regular collection routine of the law firm, which was retained by Palm Coast. On February 22, 1999, Mitchell A. Dinkin (Dinkin) a partner in the law firm, sent a demand letter to the Debtor Jack Schloss and requested payment of the judgment. Jack Schloss in a handwritten note at the bottom of the letter, wrote, "Any further attempt to collect this invalid claim will be at your own risk." (Cr.Ex.9).

Upon receipt of the response from Jack Schloss, Dinkin ordered a credit report on the Debtors from Equifax. Palm Coast claims that the credit report, dated April 22, 1999, did not reveal the existence of more than twelve (12) creditors for either Debtor. (Cr.Ex.'s. 1 and 2). On May 13, 1999, Mr. Dinkin ordered a "Realtime Report" which indicated that Jack M. Schloss owned a 1996 Peterbilt tractor and 1989 Cottrell trailer, which were free and clear of any encumbrances. (Cr.Ex.3) On June 8, 1999, Dinkin ordered Profile Reports for each Debtor (Cr.Ex.'s 4 and 5). The Profile Report basically dealt with the history of several vehicles, dating back as far as 1994 and sheds absolutely no light whatsoever on the financial status of the Debtor Jack Schloss, but certainly contains an extensive treatment of the accident history of Jack Schloss. The Report also includes some property information, corporate information and one column entitled "skip-trace" information and "Neighbor Information." The identical report was also submitted on behalf of Frances Schloss, with was basically identical to the "Profile Report" of Jack Schloss.

Upon receipt of the negative response from Jack Schloss to the demand letter,

Hurd instructed Dinkin to proceed and prepare instructions for levy on a 1996 Peterbilt Tractor and 1989 Cottrell trailer. (Deb.Exh. 1 & 2). The instructions were delivered to the Sheriff of Collier County. However, the Sheriff was not able to levy on the vehicles in question because both the tractor and the trailer in question were not titled in the name of Jack M. Schloss but in the name of Elephant Transport.

On September 9, 1999, Dinkin noticed the Deposition in Aid of Execution of Jack M. Schloss. The deposition was conducted by Hurd and because Jack Schloss did not bring any of the documents requested by the Subpoena duces tecum served on him, Hurd told him that they should reschedule the deposition for the next day in order for Schloss to bring the required documents. Schloss told Hurd that he will not appear on the next day because he is an over-the-road driver and was about to take a trip. Frances Schloss was also noticed for the same day September 9th, but she did not appear claiming that she was too ill. Hurd did not follow through or take any action to enforce the subpoenas issued to the Debtors.

At his deposition on September 9, 1999, Jack Schloss testified that he had no other creditors other than the two (2) Barnett Bank Judgments. (Cr.Ex. 6, page 26, lines 4–6.) Jack Schloss further testified that day that he did not have any credit cards and had no debts whatsoever (Cr.Ex. 6, page 26, lines 20–23). Mr. Hurd asked questions regarding specific creditors who were disclosed on the credit report previously obtained from Equifax. Jack Schloss testified that he did not have a credit card with First USA (Cr.Ex. 6, Page 29, lines 1 and 2). Mr. Hurd asked whether Jack Schloss had a PRDN Bank Corp. Credit Card. In response, Jack Schloss indicated no and further testified that "I told you I owe nobody anything except for this damn judgment over here." (Cr.Ex. 6, page 29, lines 18–23).

Immediately after the deposition, Mr. Hurd made a decision to have involuntary Petitions filed against the Debtors. The decision to file the involuntary Petitions was based on the alleged transfers of the title to the tractor and trailer from Jack Schloss to Elephant Transport, Inc., but most importantly, in reliance on Jack Schloss's testimony given at the deposition on September 9th. At no time did the law firm on behalf of Palm Coast request or obtain an updated credit report either from Equifax or from TransUnion.

The involuntary Petitions and Summons were not actually prepared until shortly before February 22, 2000. On February 22, 2000, Palm Coast filed involuntary Petitions against Jack M. Schloss and Frances Schloss alleging that it held a valid claim against Jack M. Schloss and Frances Schloss represented by a Final Judgment originally assigned by Barnett Recovery Corporation to Palm Coast Recovery Corporation. The Petitions also alleged that Jack M. Schloss and Frances Schloss did not generally pay their debts as they became due. It is for those reasons Palm Coast Recovery Corporation sought the entry of Orders for relief pursuant to § 303(b) of the Bankruptcy Code.

Jack and Frances filed their list of creditors on May 11, 2000. (Doc. No. 13 and 9, respectively). Despite this notice plus the previous motions and hearings held in this case, Palm Coast filed Amended Petitions on May 15, 2000 in each case. Palm Coast admitted that it did not conduct additional investigative efforts to review the validity or legal accuracy of the Amended Petitions. On May 19, 2000, the Court entered an Order dismissing the Counterclaim filed by Debtor April 4, 2000, with leave to file Motions for Sanctions (Doc. No. 20/Jack).

The Debtors each filed Motions for Sanctions on May 12, 2000.

Mr. Hurd, who deposed Jack Schloss, said that he primarily relied on the testimony of Jack Schloss who indicated he had only three (3) creditors. Only the AFSCI/Associates debt of $8,000.00 was being paid which was secured by the 1990 Cadillac driven by Frances Schloss. Mr. Hurd also inquired regarding Frances Schloss' financial condition since she failed to appear at the deposition or produce documents at the deposition. Jack Schloss indicated that Frances Schloss' financial condition was the same as his and Mr. Hurd believed that the finances of Jack Schloss and Elephant Transport, Inc., were combined to the point where he could not determine whose assets were whose. Mr. Hurd testified that he had no malice toward Mr. and Frances Schloss and did not file the involuntary Petitions to harass them. Mr. Hurd further testified if it weren't for Jack Schloss' deposition testimony at the September 9, 1999 deposition, the involuntary Petitions would not have been filed against either Debtor.

There is nothing in this record to indicate that these Debtors do not pay their bills as they become due with the exception of the two obligations, one owed to Palm Coast and the other to Barnett.

Basically these are the facts relevant to the matter under consideration which, according to the Debtors, would warrant an award for attorney's fees and costs for compensatory and punitive damages. It can no longer be gainsaid that § 303(i) is a specific grant by Congress which authorized the bankruptcy courts to award attorney's fees and costs in favor of a debtor and against the Petitioning Creditors if the involuntary Petition was dismissed at the request of the Debtors. It is equally clear that upon finding that a Petition has been filed in bad faith the Court may award damages that are proximately caused by the filing and under special circumstances to award punitive damages. The award of fees and costs and damages is contingent and depends on three requisites: (1) a dismissal of the involuntary Petition; (2) a dismissal without the consent of all Petitioners and the Debtor; and (3) the Debtor did not waive its right to recovery under § 303. See *In re R. Eric Peterson Constr. Co.,* 951 F.2d 1175 (10th Cir.1991). Although it is recognized that the award of fees and costs is within the Court's discretion, there is some authority to support the proposition that an award is appropriate in all cases where the Debtor successfully defended against an involuntary Petition. Thus, the right to an award for fees and costs creates a rebuttable presumption. *In re K.P. Enterprise,* 135 B.R. 174 (Bankr.D.Me.1992).

In addition, an award might be enhanced by compensation for damages and possibly the imposition of punitive damages if it has been established by the preponderance of the evidence that the Petition was filed in bad faith. *In re Kearney,* 121 B.R. 642, 645 (Bankr. M.D.Fla.1990). This Court had the opportunity to consider the factors which are appropriate in the case of *In re Ballato,* 252 B.R. 553, 558 (Bankr.M.D.Fla.2000) and they are as follows: (1) the subjective test, (2) the objective test, (3) the improper purpose test, (4) the improper use test, and (5) the combined test.

This record leaves no doubt the primary if not the sole reason to file this involuntary Petition was to use this Court to assist Palm Coast to collect its judgment. It is clear that when a petitioning creditor is advancing his own interest rather than protecting against other creditors gaining disproportionate advantages the Petition was filed in bad faith. An invol-

untary Petition is clearly not a substitute for customary collection procedures. See *General Trading, Inc. v. Yale Materials Handling Corp.*, 119 F.3d 1485, 1501 (11th Cir.1997) (*quoting In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr.N.D.Ill.1989) (stating it is bad faith under the improper use test to use the Bankruptcy Code as a substitute for customary collection procedures)); *In re Atlas Machine and Iron Works, Inc.*, 190 B.R. 796 (Bankr.E.D.Va. 1995) (holding that initiation of an involuntary bankruptcy as a tool to collect a single debt is improper). The Debtor is entitled to an award of attorney's fees and costs but unless there is a showing that it was done with malice, punitive damages award is not appropriate.

■ In the present instance it is undisputed that Dinkin informed Charles Murray, the attorney who was then representing the Debtors, that the Debtors don't have to respond to the involuntary Petition if they pay the judgment; they will dismiss the involuntary case. The most telling evidence of the motive for filing this involuntary comes from the testimony of Mr. Hurd who stated that he considered it to be a most economical tool to collect this judgment through bankruptcy because the special powers granted by the Code to the Trustee in bankruptcy would assure an easier assembling of the assets of Debtors than they could accomplish through ordinary methods to enforce the judgment. It has been his experience that it is more expensive for a single creditor to collect the judgment through state court procedures than could be accomplished by a bankruptcy trustee at less cost to a creditor. It is more economical to have a bankruptcy trustee to attempt to get assets and liquidate them, and it is more expensive for a single creditor to do the same in the state court.

In the last analysis, this record leaves no doubt that the pre-filing investigation by Palm Coast fell far short of the minimum standard required to commence an involuntary case against the Debtors. This is even more important and it is clear that this is basically an attempt to collect a debt owed to a single creditor, and there is nothing in the record to indicate these Debtors do not pay their debts as they become due, with the exception of the debt owed to Palm Coast and Barnett Bank, both of which are indispensable elements required by law to maintain a viable involuntary case against debtors. A commencement of an involuntary case has very serious legal and economic consequences on the debtor and one should not lightly institute an involuntary case against debtors, especially for the purpose of filing an involuntary case. It is clear that in filing these involuntary Petitions against these Debtors, the Petitioning Creditor had an improper motive, albeit not necessarily based on ill will or malice. For this reason, there is no question that the award of attorney's fees and costs is appropriate pursuant to § 303(i)(1)(A) and (B), and compensatory damages, if any, pursuant to § 303(i)(2)(A) upon presentation of competent proof, but does not warrant the imposition of punitive damages pursuant to § 303(i)(2)(B).

The Motion under consideration sought the imposition of sanctions pursuant to 18 U.S.C. § 157 and 18 U.S.C. § 151 et seq. Counsel for the Debtors furnished no authority for the proposition that any of these statutes cited contain any provision to impose civil penalty or sanctions for an improper filing of an involuntary case pursuant to § 303 of the bankruptcy code which has its own sanction provisions under § 303(i) which is the only basis to impose sanctions for the filing of an improper involuntary case which has been dismissed by the Court.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that imposition of sanctions pursuant to 18 U.S.C. 151 et seq., be and the same is hereby, denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion to Impose Sanctions, pursuant to § 303(i) be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DE-CREED that a Final Evidentiary Hearing to establish the amount of the award for attorney fees and costs, and compensatory damages, if any, be and the same is hereby, scheduled to be held before the undersigned at the U.S. Courthouse, Federal Building, 2110 First Street, Room 4–117, Courtroom D, Fort Myers, Florida on January 18, 2001 at 3:00 pm.